Maudie Virginia BRANCH, Adm'x of the Estate of Jack Earl Branch, Deceased, Appellant,

v.

Jack WHITAKER et al., D/B/A J. Whitaker and Son, et al., Appellees.

Court of Appeals of Kentucky.

Oct. 26, 1956.

Thomas K. Shuff, Georgetown, Alvin B. Trigg, Lexington, for appellant.

Bradley & Bradley, Georgetown, for appellees.

STEWART, Judge.

On August 5, 1953, Jack Earl Branch was killed when his car ran into the rear of a tractor-trailer truck on U. S. Highway 25 near Georgetown. Plaintiff, Maudie Virginia Branch, as administratrix, sought in circuit court to recover from defendants, Jack Whitaker and Gene Whitaker d/b/a J. Whitaker and Son, the owners, and Howard Corbin Horn, the driver, $60,000 for the death of Jack Earl Branch, $665 for his funeral expenses, and $2,150 for the destruction of his car. It was alleged the negligent operation and management of the truck by Horn caused it to collide with decedent's car. We shall re-

fer herein to the administratrix as plaintiff and to the Whitakers and Horn as defendants.

Decedent was traveling north on the highway. Horn, acting upon instructions from his employers, the Whitakers, was also proceeding north on the highway with a truck-load of cattle. At a location about two miles south of Georgetown, and around midnight, the truck suddenly quit running and came to a halt, standing entirely on the paved portion of the highway in the east lane headed up-hill to the north. There is disagreement among the witnesses as to how long the truck remained in this position before the fatal crash. However, it seems to have been there from ten to thirty minutes.

There was no dispute but that the lights were burning on the rear of the truck. According to Horn, these consisted of two clearance lights, one tail light and a brake light, and they were burning brightly. Plaintiff's witness, state highway patrolman, William K. Juett, Jr., testified the rear lights were "burning bright as they are required by law". J. Richard Miller, another of plaintiff's witnesses, described the same lights as "burning low, dimming all the time". His wife, who also appeared in behalf of plaintiff, stated that these lights "were very, very dim," but her view was from the west side of the highway approximately 25 feet north of the truck and she was looking toward the front of it.

Horn, who wore a white T-shirt on the occasion, stated he took up a position some 200 feet south of his truck and vainly attempted to flag the Branch car down. He was unable to do so and at the last moment jumped into the ditch to the east of the highway in order to avoid being struck himself. He estimated the speed of the Branch car at from 75 to 85 miles per hour. Plaintiff's witnesses, the Millers, placed it at about 45. The skidmarks caused by the tires of the Branch car when he finally applied his brakes started approximately fifty feet to the rear of the vehicle. No flares were put out by Horn, although he was warned twice by the state highway patrolman, Juett, to do so before the collision.

The trial of the action resulted in a verdict for defendants upon which judgment was duly entered. On this appeal it is the contention of plaintiff that the trial court committed error in the following respects:

1. "Instruction No. C" offered by defendants and given by the court was prejudicially erroneous.

2. The court erred in permitting the jury to visit the scene of the accident, and to separate in doing so, after the case had been fully concluded and submitted to it.

3. The directions given by the court to the jury concerning the manner in which the jury should visit the scene of the accident were erroneous.

4. The misconduct of the jury at the scene of the accident was prejudicial to the rights of plaintiff.

These grounds will now be considered in the order listed.

"Instruction No. C" reads: "The court instructs the jury that the defendant, Howard Corbin Horn, at the time and place set forth in the evidence, was under no duty to set flares in the front, rear or to the side of his disabled vehicle if at the time and place he had the lights on the rear of his truck lighted and visible for a distance of 500 feet."

It is argued this instruction assumes without question that the truck was disabled to the extent it was proper for it to be left standing on the highway. It is also contended, relying upon the evidence of J. Richard Miller and his wife, that the lighting system on the rear of the truck was not functioning properly, with the result that the jury should have been permitted, under a proper instruction, to determine if the driver of the truck was negligent because he failed to put out flares, which KRS 189.-

**950**

070(2) requires when the lights of the vehicle are disabled.

We believe the primary intention of the foregoing instruction was to explain that no duty existed to place flares on the highway *if at the time and place* the lights on the truck were on and visible for a distance of 500 feet. Flares are not required to be placed on the highway under the circumstances mentioned in the instruction. See KRS 189.050(4). The evidence did not establish that the truck's rear lights were disabled. Although Juett, the state highway patrolman, told the truck driver, Horn, to put out flares, it was not proven that the lights could not be seen 500 feet to the rear of the truck. This same officer, as well as Horn, declared they could be seen that distance. Plaintiff's two witnesses, the Millers, said the lights were burning but they were dim. How dim? Neither of these witnesses favored us with an explanation on this point.

When we evaluate the evidence, we conclude the giving of "Instruction No. C" was warranted in order that the issue could be resolved as to whether the visibility of the lights was such that KRS 189.050(4) was satisfied. But the court did not stop with this instruction on the subject of lights. Out of an abundance of precaution, the court also submitted "Instruction No. 3" which allowed the jury to determine, in addition, whether Horn should have put out flares in the manner prescribed by KRS 189.070(2). It is thus apparent plaintiff's contention as to "Instruction No. C" is without merit and her complaint that the court failed to set forth Horn's duty as to placing flares on the highway was met by the giving of "Instruction No. 3". Obviously, when these two instructions are considered together, they adequately cover the duties raised by the evidence on the subject of lights.

In her criticism of "Instruction No. C", plaintiff argues that defendants should have established it was *impossible* to avoid the truck's occupancy of the main traveled portion of the highway or it was impracticable to remove it therefrom until repairs were made or sufficient help was obtained to remove it, as required by KRS 189.450(1). Another argument advanced in this connection is that Horn failed to resort to diligent measures to secure assistance and, hence, the court should have submitted to the jury the question as to whether he was negligent for this reason.

Although all the testimony was to the effect that it was *impossible* to remove the truck from the highway, plaintiff nevertheless puts forth the novel theory that the truck could have been made to roll backward off the road by the pull of gravity, if the brakes had been released, as it was stalled on a slight incline, and, since, as plaintiff maintains, it was shown there was a shallow ditch on the east side of the road, it could have been guided off the main traveled portion of the road. The only trouble with this theory is that there was an issue of fact developed by the testimony which raised a doubt as to whether the side of the road was in such condition that one might safely risk the attempt to maneuver a disabled trailer-truck off the road at that spot in the manner indicated. As regards this same theory, the record discloses the court gave "Instruction No. 2", based upon the provisions of KRS 189.450(1), which told the jury in substance that Horn should not have left the truck standing upon the highway unless it was so disabled he could not move it, or unless it was impracticable to remove it therefrom until repairs had been made or sufficient help obtained. We believe this instruction, and the jury's determination under it, was an answer to plaintiff's contention in respect to the possibility of gliding the truck off the highway under the circumstances.

As to the second argument, the record reveals plaintiff's witness, Mrs. J. Richard Miller, called for a wrecker soon after the truck stalled on the highway and this was a fact which Horn knew. Thereafter Horn became busily engaged in efforts to

direct traffic around the vehicle while waiting for help. We are at loss to know, and plaintiff does not indicate, what more Horn could have done toward speeding up the elimination of the hazardous condition. It is our opinion there was no showing that Horn was derelict in his efforts to get the truck off the highway.

■ The next complaint arises from the fact that the jury were permitted, pursuant to their request, to visit the scene of the accident after the case had been submitted to them and after they had deliberated for approximately thirty minutes. Plaintiff claims the court had no discretion or power to allow a visit of the nature mentioned after the jury had begun consideration of the case, as such action in effect enabled a jury to receive additional evidence after the case had been finally submitted to them. Such a proceeding, however, was sanctioned by this Court in Louisville N. A. & C. Ry. Co. v. Schick, 94 Ky. 191, 21 S.W. 1036, 1037. There, as in the case at bar, the jury, after the case had been given to them came back into court and asked permission to view the scene of the accident. The trial court granted this request and on appeal the ruling was upheld by this Court. We said in the Schick case that under the provisions of Section 318 of the Civil Code of Practice (now KRS 29.301) "the court is unlimited as to the time of allowing the view; for as that section contains no limitation as to time, the court has the right to order the view at any time during the investigation of the case by the jury." That opinion went on to say that Section 321 of the Civil Code of Practice (now KRS 29.304) also "expressly authorizes the course pursued by the court". We believe the Schick case conclusively answers plaintiff's contention on this point.

■ Plaintiff's next two grounds for reversal are untenable, and, since they concern the visitation of the jury to the location of the collision, we shall consider them together. The first is that the court erred in permitting the jury to go to the place of the accident in three automobiles, accompanied by an officer of the sheriff's department in one of the cars. It is maintained the members were allowed to separate in violation of KRS 29.303 because they traveled in this fashion. When KRS 29.303 speaks of "separation" it does not demand that the jury remain in one tight, compact body. This statute simply prohibits the jury members from completely abandoning their appointed task as a body and going their respective ways. Actually, for all practicable purposes the jury remained in a body, for it was shown they went directly to the cars, they drove straight to the scene, and they were within the view of the officer at all times. It will be recalled the accident occurred about two miles from the courthouse. Furthermore, there is no evidence that any one of the jury was tampered with or that any outsider attempted to communicate with any of them.

■ The second contention is leveled at the so-called misconduct of certain members of the jury at the place of the collision. The alleged acts consisted of the jury separating into various groups and talking among themselves and of two of the jurors referring to a map which had been introduced by plaintiff while a third juror took measurements which he gave to these two jurors. As soon as the jury returned to the courtroom, counsel for defendants filed a motion to set aside the swearing of the jury and to dismiss the panel by reason of the acts indicated. An affidavit to support the motion accompanied it. The record reveals no formal ruling was entered on this motion, although plaintiff maintains the court overruled it. After the verdict had been rendered, plaintiff filed a motion and grounds for a new trial setting forth the alleged misconduct of the jury as one of the grounds. The motion and grounds were overruled. We therefore have a situation where plaintiff seeks to avail herself of an error raised but not pursued to finality by

defendants. We have been unable to find a Kentucky case on this proposition, but other jurisdictions have passed on the question. In Yates v. Vail, 29 N.M. 185, 221 P. 563, it was held that if several parties are entitled to move or object, and less than all do so, those who fail or refuse to join therein derive no benefit from the motion or objection of those who follow such a course. A similar ruling was made in State ex rel. St. Louis Bridge & Terminal Railways Co. v. Haid, 325 Mo. 532, 29 S.W.2d 714, and Foos Gas Engine Co. v. Fairview Land & Cattle Co., Tex.Civ.

App., 185 S.W. 382. We conclude the court's refusal to grant plaintiff relief as to this assignment of error made by defendants was proper. However, another reason for sustaining the lower court's adjudication on this point is that neither of the parties did not press for a ruling on the motion and we have consistently held that a motion or objection not ruled upon is considered waived. See Prichard v. Kitchen, Ky., 242 S.W.2d 988, and the cases cited therein on this point.

Wherefore, the judgment is affirmed.