Stargle R. DUNCAN, Appellant,

v.

WISEMAN BAKING COMPANY, Inc., et al., Appellees.

Court of Appeals of Kentucky.

June 9, 1961.

As Modified on Denial of Rehearing June 22, 1962.

Earle M. Nichols, Madisonville, William M. Deep, Henderson, for appellees.

STANLEY, Commissioner.

The plaintiff in an action for personal injuries and property damage sustained in an automobile accident brings an appeal from a judgment for the defendants, Wiseman Baking Company and its drivers, H. E. Raiford and James A. Murray. The major conditions and factors are not in dispute. A reversal of the judgment is sought upon claimed errors, (1) in omitting from the instruction on the duties of the defendants the duty to put out flares or other warning signals upon the highway, and (2) in the contributory negligence instruction by placing too great a duty upon the plaintiff when blinded by lights of another car. A third ground of error need not be considered.

The accident occurred after dark in January, 1958, on a two-lane highway in Webster County. A large tractor-trailer (overall length of 45 feet) of the Wiseman Baking Company of Rome, Georgia, and operated by its employee Raiford was stalled because of motor trouble. It was headed east on the south side of the highway and stopped about half on the paving and half on the shoulder. A passenger automobile driven by the company's employee, Murray, had gone ahead of the truck. He returned when he had become separated from the truck and stopped when he came upon it. The motor of the truck was tight by reason of recent repairs and its battery lacked enough power to start it; so Murray pulled up beside it in the center of the highway, headed west, for the purpose of connecting his car's battery by a cable or "jump cord" with the truck's battery to give it increased power. Thus, the highway was completely blocked by the defendant's two vehicles, except that cars could squeeze through in the north lane. The accident occurred while the battery cable was being connected.

· Damon A. Vaughn, Withers, Lisman & Withers, Dixon, for appellant.

We summarize the testimony of the plaintiff, Stargle R. Duncan. He was traveling

east, the same way the truck was headed. The road was straight but rolling. As he came over a low hill, Duncan was blinded by the headlights of the Murray car, and he dimmed his own but got no response. He thought the car was moving and sounded his horn, assuming that the Murray car would get back in its lane. But as he drew near he discovered it was standing still in the middle of the road and no one was in it. He started to drive off on the right shoulder or "take the ditch." When he got about ten feet from it, the truck loomed before him "in a flash." His car was then about halfway on the shoulder of the road. There were no lights on the truck. He discovered later that the reflectors were covered with mud. Duncan testified he could not tell what the obstruction was at the moment because he was blinded by the lights of the Murray car. He was going 15 or 20 mph and had skidded about 20 inches before the impact. There were no flares to warn travelers of the blocked highway. Upon citations by a state policeman of Raiford, the driver of the truck, for failing to put out such warning signals, and of Murray, the driver of the passenger car, for improper parking, both entered pleas of nolo contendere and each was fined $10 by the Webster Quarterly Court.

The defendants' evidence was that Duncan had come up fast and left skid marks 35 or 40 feet long rather than 20 inches, as he testified.

They testified that the parking lights on the rear of the trailer were in good order and burning and that there were a number of lights at the top and around the side and rear of the trailer; also, that Fincher, who was on the truck with the driver, Raiford, was standing back of the tractor-trailer, flagging traffic with an electric lantern, and that the plaintiff, Duncan, could have seen the flare which had been placed one hundred yards east of and in front of the truck. A state policeman corroborated the plaintiff that there were no lights on the rear of the tractor-trailer when he arrived at the scene.

The defendants introduced evidence that the plaintiff had the odor of alcohol on his breath and an empty beer can and several unopened cans were in his car. He denied he had had a drink of beer or any other intoxicant before the accident.

I. We consider first the failure of the defendants to have put out flares on the highway.

The primary instruction defined the duties of the defendants Wiseman Baking Company and Raiford as being not to stop the truck on the traveled portion of the highway or leave it standing there unless the truck had become disabled in such manner and to such extent that it was impracticable to move the same while waiting repair or sufficient help to move it, and the "further duty to leave displayed on the rear of said truck a red light visible from the rear five hundred feet away under ordinary atmospheric conditions." This is in accord with KRS 189.450(1) (a). The court refused plaintiff's request to add the following provision to that instruction:

"If you shall believe that said truck and its lighting equipment were disabled, it was the duty of the driver of said truck to cause lighted flares, lanterns or other signals capable of continuously producing three warning lights, each visible for a distance of at least 500 feet in advance of the vehicle, one at a distance of approximately 100 feet to the rear of the vehicle and the third upon the roadway side of the vehicle."

The statute, KRS 189.070(2), provides:

"Whenever any motor truck and its lighting equipment are disabled during the period when lighted lamps must be illuminated on vehicles and the truck cannot immediately be removed from the main traveled portion of a highway outside of a business or residence district, the person in charge of the vehicle shall cause the flares, lanterns or other signals to be lighted and placed upon the highway, one at a distance

of approximately one hundred feet in advance of the vehicle, one at a distance of approximately one hundred feet to the rear of the vehicle and the third upon the roadway side of the vehicle, except that if the vehicle is transporting flammables three red reflectors may be so placed in lieu of the other signals and no open burning flare shall be placed near the vehicle."

Similar statutes of other states make the duty to put out flares absolute when a motor vehicle has been parked or stopped on the traveled portion of the highway at nighttime. 60 C.J.S. Motor Vehicles § 335d. See Annotation, 67 A.L.R.2d 12. It is to be noted that our statute requires such action "whenever any motor truck *and* its lighting equipment are disabled." (Emphasis added.)

The rejection of the offered instruction on the duty of the defendants to "cause flares, lanterns or other signals to be lighted and placed upon the highway" was doubtless because of absence of evidence that the lighting equipment of the vehicle was "disabled." It was admitted that the motor truck was disabled and could not be immediately removed from the main traveled portion of the highway.

We have heretofore construed the statute, KRS 189.070(2) literally, and said that an instruction on the duty declared therein was not required where the lights of the vehicle were not disabled, even though the truck was stalled because of mechanical difficulty. Basham's Adm'x v. Witt, 289 Ky. 639, 159 S.W.2d 990; Branch v. Whitaker, Ky., 294 S.W.2d 948. In other cases we have held it to be for the jury to determine whether the exigencies of the particular condition required the operator of the vehicle to use flares as emergency warnings. Harry Holder Motor Co. v. Davidson, Ky., 243 S.W.2d 926; Smith v. Collins, Ky., 277 S.W.2d 38; Branch v. Whitaker, supra, Ky., 294 S.W.2d 948. Some of these cases appear to have regarded slight evidence tending to show disablement of the lighting equipment as justifying the instruction.

Upon further and mature consideration, we are impelled to the view that our literal construction of the statute does not conform to its purpose or the legislative intent to promote highway safety and to protect the traveling public from the hazardous situation of a big motor vehicle stalled on the "main traveled portion of a highway" in the nighttime by providing special and specific warning signals in addition to the lights displayed on the vehicle. These signals also give warning that the vehicle is stationary. Such literal interpretation of the statute permits the operator of a truck stalled because of mechanical disablement to switch off the lights and let it stay on the road in the dark, and yet be under no obligation to warn the traveling public with flares or similar signals just because the lighting equipment was not out of order. Vice versa, the truck could be left standing in a traffic lane even though it was not disabled if its lighting equipment was out of order, and the operator would be excused by the law. Our previous construction of the statute defies reconciliation with the obvious purpose of the statute. There should be a practical construction and application of its terms.

True, the Legislature used the connective word "and." But since the popular use of the words "or" and "and" is loose and frequently inaccurate, the courts may and should change "and" to "or," and vice versa, whenever such conversion is required, inter alia, to effectuate the obvious intention of the Legislature and to accomplish the purpose or object of the statute. James v. United States F. & G. Co., 133 Ky. 299, 117 S.W. 406; Commonwealth v. Bartholomew, 265 Ky. 703, 97 S.W.2d 591; Asher v. Stacy, 299 Ky. 476, 185 S.W.2d 958; Sutherland, Statutory Construction, (3d ed.), Vol. 2, § 4923; 50 Am.Jur., Statutes, § 282. We think there is reasonable justification to regard "and" as "or" in the statute under consideration in order to accomplish its purpose. This has the effect of requiring the display of flares or similar

signals if either the vehicle or the lighting equipment is disabled.

An Illinois statute construed in Wise v. Kuehne Mfg. Co., 322 Ill.App. 26, 53 N.E.2d 711, 714, like our Kentucky statute, required the display of flares whenever a motor vehicle and its lighting equipment were disabled. A trailer-truck was stopped on the highway because of mechanical trouble. Its body was illuminated, like the defendants claim the machine in this case was, and there was conflict in the evidence as to whether or not warning flares had been put out. In response to the contention of the appellants (defendants below) that before the statute applied and they would be obliged to put out flares, the truck must have been disabled mechanically and its lighting equipment have been inoperative, the court said:

"If this were true, a truck could be stopped on a highway with no lights whatsoever, and if the truck were not mechanically disabled, there would be no duty under the foregoing statute to warn the travelling public with lighted flares. We are of the opinion that this being a remedial statute, it was the intention of the legislature that in either the event of the truck being without lights or it being stalled on the highway because of mechanical disability, it is the duty of the driver of the truck to use flares as outlined in the statute. Any other construction would be unreasonable. Rosenthal v. Prussing, 108 Ill. 128; People v. Trustees, 322 Ill. 120, 124, 152 N.E. 555."

We are in accord with that view of our statute. Our previous construction of the statute, KRS 189.070(2), in conflict is overruled.

■ Our statute, quoted above, merely requires that the flares or similar warning signals be placed upon the highway at the places described. It has usually been recognized in the construction of like statutes—even though they may provide for "immediate" placement—that the driver is afford-ed a reasonable time to comply. But in construing "reasonableness" the courts have been somewhat strict, the tendency apparently being to require the flares to be placed within a very few minutes in the absence of circumstances excusing a longer delay. Numerous cases to this effect are summarized in Notes, 67 A.L.R.2d 48. We think that placing the flares should be done with reasonable promptness. With that criterion, we examine the evidence on the point.

■ There was evidence in behalf of the plaintiff that the truck had been stalled on the highway about an hour, and that the men on the truck had said they had had to go to a certain store to get kerosene for the flares. On the contrary, there was evidence that only fifteen or twenty minutes had elapsed and the errand to get kerosene was made not before but after the accident. But the defendants' own evidence showed that enough time had elapsed for Murray to have driven some distance ahead before he discovered the truck was not following and turned around and driven back to the stalled truck and become engaged in connecting up the batteries. There were two men with the truck. One of them had had time to walk about 100 yards east and set out a flare and walk back to the truck and set about preparing another flare to be placed west, or back of the truck, when the accident happened. It seems to us that as a matter of common prudence and ordinary reasoning, the first flare should have been placed back of the truck to warn approaching motorists that the south lane, in which they were traveling, was blocked, instead of ahead as a warning to motorists in the north lane. Apparently one of the men on the truck did nothing toward putting out flares. Reasonable promptness was not shown.

It has been frequently held that a violation of similar statutes is negligence per se. Note, 67 A.L.R.2d 21. In Burns v. Fisher, 132 Mont. 26, 313 P.2d 1044, 67 A.L.R.2d 1, the driver of a truck who had not put out flares as required by the statute was killed when his stalled truck (in which he was sitting) was run into by the defendant's

truck. He was held to have been guilty of contributory negligence as a matter of law.

■ We are of opinion that the defendant company and its driver, Raiford, were negligent as a matter of law.

■ Concerning the passenger car. The driver, Murray, was negligent per se in parking it in the middle of the highway with glaring headlights blinding approaching motorists. Wilson v. Dalton's Adm'r, 311 Ky. 285, 223 S.W.2d 978. That the lights did blind the plaintiff is not contradicted by either positive or inferential evidence. Likewise, there is no contradiction that because of those lights he could not see the parked truck in his lane of travel sooner than he says he did.

■ The evidence shows the joint and concurring negligence was responsible for the extremely hazardous situation by violations of both statutory and common law. Of course, this is imputed to the corporate defendant. If the evidence is substantially the same on another trial, the court should instruct the jury to find for the plaintiff unless they should believe he was contributorily negligent.

II. We consider the question of the plaintiff's contributory negligence.

■ Of particular application here is the law which gives the right to a motorist who is keeping proper lookout ahead to assume that other drivers on the highway will observe the law of the road and will not unlawfully obstruct the highway, "even though an existing but vanishing condition may prevent a present view ahead." City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022, 1023. Motorists are not obliged "by the doctrine of ordinary care to keep a lookout for an unlighted, invisible truck in the lane of their travel." Owen Motor Freight Lines v. Russell's Adm'r, 260 Ky. 795, 86 S.W.2d 708, 711; Crawford Transport Co. v. Wireman, Ky., 280 S.W.2d 163.

The given instruction on contributory negligence defined the plaintiff's duties, in substance, to have been to exercise ordinary care for his own safety; to operate his automobile in a careful manner, having regard for the use and condition of the highway and the atmospheric conditions; to keep a lookout ahead for persons or vehicles in his path or so near thereto as to be in danger of being struck by his car; to exercise ordinary care to run and operate his automobile so as not to collide with another vehicle on the highway, and to have two lighted headlights capable of revealing objects at least 350 feet in front of him under ordinary atmospheric conditions. This was the instruction requested by the plaintiff and seems to be correct as far as it went. But the court added a paragraph, over plaintiff's objection, that it was the further duty of the plaintiff if his vision was blinded or affected by the headlights of the Murray car, "to slacken the speed of his automobile, sound its horn and have it under such control that he could, by the exercise of ordinary care, stop it and avoid a collision with any object that might be obstructing the highway which he was not able to see."

The grounds of objection were (1) that it would have been a futile thing for him to have sounded his horn under the circumstances, and (2) that he was not required to stop his car to avoid colliding with any object he could not see because the law did not require him to stop but merely to exercise ordinary care.

■ The prefatory Summary to extensive annotations of the subject, "Duty and liability of vehicle driver blinded by glare of lights.", 22 A.L.R.2d 292, points out that considerations of the congestion of modern highways and normal speed of motor cars have led to a departure by many courts from the earlier rule that required a motorist to stop when blinded by lights of approaching cars. The modern rule, generally accepted, is that a motorist so blinded is not required to stop instantly but his duty is determinable by the standard of ordinary care under the particular circumstances, al-

though the rule is subject to a number of exceptions. A motorist is not entitled to proceed as if he could see ahead, but is required to take additional precautions for the safety of himself and others which are commensurate with the existing danger, such as slackening his speed and bringing his car under such control that he is able to stop it in time to avoid any discernible object in the road ahead or within such distance as he can at all times see what is ahead of him. 5A Am.Jur., Automobiles, §§ 332, 707, 1072; 60 C.J.S. Motor Vehicles § 294; Blashfield, Cyclopedia of Automobile Law, § 744; Notes, 22 A.L.R.2d 300, et seq.

Our later decisions are, generally, to the same effect. City of Providence v. Young, 227 Ky. 690, 13 S.W.2d 1022; Commonweath v. Daniel, 266 Ky. 285, 98 S.W.2d 897; Knight v. Silver Fleet Motor Express, 289 Ky. 661, 159 S.W.2d 1002; Wilson v. Dalton's Adm'r, 311 Ky. 285, 223 S.W.2d 978; Harris v. Luster, Ky., 259 S.W.2d 489; Slusher v. Brown, Ky., 323 S.W.2d 870. Several of these cases and others are reviewed in Ashton v. Roop, Ky., 244 S.W.2d 727, and notice is taken of some inconsistencies. It was therein held that the rule declared in Lexington-Hazard Express Co. v. Umberger, 243 Ky. 419, 48 S.W.2d 1066, and Freeman v. W. T. Sistrunk & Co., 312 Ky. 438, 227 S.W.2d 979, was erroneous because it placed an absolute duty upon the driver of an approaching vehicle blinded by glare of lights to avoid a collision regardless of the character of the act which placed a stationary vehicle on the road.

With respect to other duties of a driver whose vision is blinded, no definite rule as to specific action can be laid down which would be applicable to every case. As the present case involved the striking of a stationary object in the plaintiff's lane of travel, we think the instruction imposed too strict a duty upon the plaintiff. It seems to us the instruction should have been that when the plaintiff was blinded or his vision of the highway was obscured by the headlights of the Murray car, it was his duty to take such protective measures for his own safety as an ordinarily prudent driver would take under the same or similar circumstances. The jury may regard that precaution to have required sounding the horn or slackening speed or even stopping, according to the particular circumstances of a case, but no specific instruction on such actions is necessary or desirable.

The judgment is reversed for consistent proceedings.