RENDERED: MARCH 22, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0144-MR

JIMMY CALHOUN; DAVID ALLEN;
DAVID GRAVES; JACQUELINE
KEARNS; KERRY KEARNS; MARK
ANDERS; PAULA CALHOUN;
PAULA DAMRON; ROBERT
DAMRON; ROBIN ALLEN;
SAUNDRA ANDERS; AND WALT
JOURDAN                                                                              APPELLANTS


                          APPEAL FROM JESSAMINE CIRCUIT COURT
v.                        HONORABLE C. HUNTER DAUGHERTY, JUDGE
                          ACTION NO. 20-CI-00316


TALL OAK, LLC; ALEX CARTER, IN
HIS OFFICIAL CAPACITY AS A
MEMBER OF THE NICHOLASVILLE
CITY COMMISSION AND/OR
NICHOLASVILLE BOARD OF
COMMISSIONERS; BETTY BLACK,
IN HER OFFICIAL CAPACITY AS A
MEMBER OF THE NICHOLASVILLE
CITY COMMISSION AND/OR
NICHOLASVILLE BOARD OF
COMMISSIONERS; DOUG
BLACKFORD, IN HIS OFFICIAL
CAPACITY AS A MEMBER OF THE
NICHOLASVILLE CITY

COMMISSION AND/OR NICHOLASVILLE BOARD OF COMMISSIONERS; MAYOR PETE SUTHERLAND, IN HIS OFFICIAL CAPACITY; PATTY TEATER, IN HER OFFICIAL CAPACITY AS A MEMBER OF THE NICHOLASVILLE CITY COMMISSION AND/OR NICHOLASVILLE BOARD OF COMMISSIONERS; THE CITY OF NICHOLASVILLE; AND THE NICHOLASVILLE CITY COMMISSION AND/OR THE NICHOLASVILLE BOARD OF COMMISSIONERS                                                                                                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, COMBS, AND ECKERLE, JUDGES.

ACREE, JUDGE: Appellants, who reside adjacent to a former country club in Nicholasville, Kentucky, appeal the Jessamine Circuit Court's December 22, 2021 Order affirming the Nicholasville City Commission's decision to rezone the former country club to allow for residential development. Appellants argue the circuit court erred in concluding the City Commission's decision complied with applicable provisions of both Kentucky statutes and the Nicholasville Code of Ordinances. Finding no error, we affirm.

-2-

## BACKGROUND

The land which used to be the Lone Oak Country Club is located in Nicholasville, Kentucky. The club opened in 1968 and, due to decline in membership and revenue, was sold to Appellee, Tall Oak, LLC. The property is surrounded by residential homes; Appellants are individual residents who live next to what was the country club.

Tall Oak sought to develop its purchase into a residential subdivision. However, it could not do so because all 130 acres were zoned as agricultural. Tall Oak submitted a zoning map amendment application to the Nicholasville Planning Commission and the Nicholasville City Commission, seeking to construct 345 homes. On June 10, 2019, the City Commission passed Ordinance 1053-2019 expressing its intent to annex the former country club.

The Planning Commission conducted a hearing on Tall Oak's application on September 23, 2019, which was continued to October 28, 2019. The Planning Commission voted to deny the application, and Tall Oak withdrew it.

Tall Oak submitted a second application for zone amendment on January 6, 2020, which requested the City of Nicholasville to annex the property. Three acres of the property including some of the Appellants' residences were already within the city limits. The application further sought rezoning of the proposed annexed portion of the land so that Tall Oak could construct 316 homes,

reduced from the original proposal of 345. More specifically, Tall Oak wanted the land to be rezoned from "A-1 (County) Agriculture" and "A-1 (City) Agriculture" to a mix of city single family residential, city multi-family residential, and city business zoning.

The Planning Commission held a public hearing on the application on February 24, 2020. Tall Oak presented evidence of the need for the zoning change and of compliance with both the Nicholasville Comprehensive Plan and Code of Ordinances. Appellants stated their objections to the proposed zoning change. Among other reasons, they said the already overburdened sanitary sewer system could not handle the additional homes, and that development would exacerbate traffic problems in the area. Following the hearing, the Planning Commission voted to reject Tall Oak's application.

Tall Oak appealed the Planning Commission's denial to the City Commission. On May 18, 2020, the City Commission adopted Ordinance 004-2020, which rezoned Tall Oak's land from agricultural to residential.

Appellants filed their complaint with the Jessamine Circuit Court on June 17, 2020, both appealing the City Commission's decision and seeking a declaratory judgment. The circuit court affirmed the City Commission's adoption of the ordinance in an order entered December 22, 2021. The circuit court concluded the City Commission did not act beyond its authority, that Appellants

-4-

were not denied their due process rights, and that the City Commission's decision to approve the zoning change was not arbitrary, capricious, or unsupported by substantial evidence. This appeal followed.

## STANDARD OF REVIEW

As the circuit court did, we treat Appellant's action as an appeal from an administrative agency.[1] "Basically, judicial review of administrative action is concerned with the question of *arbitrariness*." *Am. Beauty Homes Corp. v. Louisville & Jefferson Cnty. Plan. & Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky. 1964) (emphasis original). An administrative agency's decision is arbitrary if the agency acted in excess of its statutory power, if a party affected by an administrative action was not afforded procedural due process, or if the administrative decision was not supported by substantial evidence. *Id*. (citations omitted). "Substantial evidence has been conclusively defined by Kentucky courts

---

[1] In *Molyneaux v. City of Bardstown*, the City of Bardstown Historic Review Board voted to approve, by voice vote, the appellant's Certificate of Appropriateness (COA) for appellant's proposed renovations to two townhouses subject to the city's historic building requirements, upon the condition that currently existing exterior elements be replaced with material currently on the side of the buildings – appellant wanted to cover wood trim with vinyl siding – and that work be completed within six months of the COA. *Molyneaux v. City of Bardstown*, 656 S.W.3d 232, 235 (Ky. App. 2022). Appellants filed both a notice of appeal and a petition for declaration of rights; we noted that, though it was unclear whether an appealable event actually occurred and thus it was appropriate for appellants to have pursued both their appeal and original declaration of rights action, the circuit court properly treated the action as if it were an appeal from an administrative agency. *Id*. at 244. This Court engaged in review accordingly. *Id*. In the instant case, there is clearly an appealable administrative action – the City Commission's approval of Tall Oak's rezoning request – and, therefore, as in *Molyneaux*, we perform our analysis through the administrative appeal lens.

-5-

as that which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the mind of a reasonable person." *Bowling v. Nat. Res. & Env't Prot. Cabinet*, 891 S.W.2d 406, 409 (Ky. App. 1994) (citing *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972)).

## ANALYSIS

Appellants argue two reasons for declaring the City Commission's decision arbitrary. First, they argue the circuit court erred because it should have determined the zoning amendment was not processed in accordance with KRS[2] Chapter 100 and, therefore, the City Commission acted beyond its statutory authority. Second, Appellants argue the circuit court erred by ruling Tall Oak was not required to submit a storm water management plan alongside its rezoning proposal, which Appellants argue is required by Nicholasville's Code of Ordinances, and, accordingly, that the City Commission acted outside its authority in approving Tall Oak's application.

*KRS Chapter 100.*

Appellants first argue the circuit court erred by failing to hold the City Commission's process in rezoning did not comply with KRS 100.209. Appellants argue that, though the City Commission adopted "An Intent to Annex

---

[2] Kentucky Revised Statutes.

-6-

Ordinance[,]" it did not attempt to amend the comprehensive plan or hold a hearing on any proposed amendment to the comprehensive plan.

The circuit court determined Appellants waived this argument because they did not raise it before the Planning Commission. We agree.

Citing *Nicholasville Road Neighborhood Consortium, Inc. v. Lexington-Fayette Urban County Government*, 994 S.W.2d 521 (Ky. App. 1999) and *Evangelical Lutheran Good Samaritan Society, Inc. v. Albert Oil Co., Inc.*, 969 S.W.2d 691 (Ky. 1998), Appellants argue "provisions of KRS Chapter 100 cannot be waived" even by agreement. (Appellants' brief, p. 6.) These cases, however, have nothing to do with, and do not negate, the rule that "failure to raise an issue before an administrative body precludes a litigant from asserting that issue in an action for judicial review of the agency's action." *O'Dea v. Clark*, 883 S.W.2d 888, 892 (Ky. App. 1994). That is the rule that governs here, and it precludes this Court from reversing on a ground which the administrative board was never given the opportunity to address.

Even if Appellants had raised the argument in a timely manner while the administrative board still had jurisdiction, and presuming the same outcome, we would not be persuaded to reverse anyway. We find no error in the circuit court's conclusion that the City Commission complied with KRS Chapter 100. KRS 100.209 allows a city to amend its comprehensive plan and official zoning

-7-

map in the event it annexes or accepts transfer of territory, provided it follows these steps first:

> When a city which has adopted zoning or other land use regulations pursuant to this chapter proposes to annex unincorporated or accept the transfer of incorporated territory, it may amend its comprehensive plan and official zoning map to incorporate and establish zoning or other land use regulations for the property proposed for annexation or transfer prior to adoption of the ordinance of annexation or transfer. If the city elects to follow this procedure, the planning commission shall hold a public hearing, after the adoption of the ordinance stating the city's intention to annex or transfer property and prior to final action upon the ordinance of annexation or transfer, for the purpose of adopting the comprehensive plan amendment and making its recommendations as to the zoning or other land use regulations which will be effective for the property upon its annexation or transfer. Notice setting forth the time, date, location, and purpose of the public hearing shall be published as required by KRS Chapter 424 and shall be given to the owners of all properties within the area proposed for annexation or transfer and to adjoining property owners in accordance with KRS 100.212(2). The city legislative body shall take final action upon the planning commission's recommendations prior to adoption of the ordinance of annexation or transfer and shall include in the ordinance of annexation or transfer a map showing the zoning or other land use regulations which will be effective for the annexed or transferred property. If the city elects not to follow the procedure provided for in this section prior to the adoption of the ordinance of annexation or transfer, the newly annexed or transferred territory shall remain subject to the same land use restrictions, if any, as applied to it prior to annexation or transfer until those restrictions are changed by zoning map amendments or other regulations in accordance with this chapter.

KRS 100.209(1). Appellants argue that, because the city annexed and rezoned real property and did not amend the comprehensive plan, the previous agricultural zoning still applies to the land. Accordingly, they argue the City Commission acted in excess of its powers.

We detect no error in the circuit court's conclusion that the City Commission processed the zoning map amendment in accordance with KRS 100.209(1). On June 10, 2019, the City Commission adopted Ordinance 1053-2019 expressing its intention to annex the former country club. Accordingly, it did so prior to a public hearing on Tall Oak's application on February 24, 2020. Lastly, the City Commission took final action by adopting Ordinance 018-2020, reversing the decision of the Planning Commission and annexing the land.

Appellants argue the statutory procedure was not followed because no attempt was made to amend the comprehensive plan. As the statute states, a city "may amend its comprehensive plan *and* official zoning map to incorporate and establish zoning or other land use regulations for the property proposed for annexation or transfer prior to adoption of the ordinance of annexation or transfer." KRS 100.209(1) (emphasis added). However, the word "and" in the statute does not operate to require amendment to a comprehensive plan where, as here, no amendment to the comprehensive plan was required to bring the zoning amendment into conformity with it.

-9-

"As a matter of application, all statutes are to be liberally construed to promote the objects and carry out the intent of the General Assembly." *Richardson v. Louisville/Jefferson Cnty. Metro Gov't*, 260 S.W.3d 777, 779 (Ky. 2008) (citing KRS 446.080(1)). If a statute is unambiguous, courts do not need to resort to extrinsic evidence to determine the General Assembly's intent. *Id*. (citing *Lewis v. Jackson Energy Co-op. Corp.*, 189 S.W.3d 87, 94 (Ky. 2005)). However, a "statute is generally open to construction only where the language used requires interpretation or may be reasonably considered ambiguous." *Overnite Transp. Co. v. Gaddis*, 793 S.W.2d 129, 131 (Ky. App. 1990) (citing 73 AM. JUR. 2D *Statutes* §§ 145 & 194 (1974)). "We presume, of course, that the General Assembly did not intend an absurd or manifestly unjust result." *Richardson*, 260 S.W.3d at 779 (citing *Commonwealth v. Reynolds*, 136 S.W.3d 442, 445 (Ky. 2004)).

In our view, it would yield an absurd result if the word "and" in the first sentence of KRS 100.209 were read to require amendment of a city's comprehensive plan in every instance a city wanted to change its zoning map, even if the proposed change already aligned with the comprehensive plan. We have recognized that "and" is not used as a necessary connection in every instance and, therefore, may be ambiguous. In *Duncan v. Wiseman Baking Company*, we noted that, because "the popular use of the words 'or' and 'and' is loose and frequently inaccurate, the courts may and should change 'and' to 'or,' and vice versa,

-10-

whenever such conversion is required[.]" 357 S.W.2d 694, 698 (Ky. 1961) (citations omitted). While the use of "and" at issue in KRS 100.209 does not require that we read "and" to mean "or," we avoid an absurd result here by reading the statute as not requiring amendment to a comprehensive plan every time a city's zoning map is amended.

Indeed, this outcome is contemplated elsewhere in KRS Chapter 100. As KRS 100.213 provides, "[b]efore any map amendment is granted, the planning commission or the legislative body or fiscal court must find that the map amendment is in agreement with the adopted comprehensive plan[.]" KRS 100.213(1). The City Commission explicitly determined as much in its findings of fact. When read in light of KRS 100.213(1), it cannot be the case that KRS 100.209 requires amendment to a comprehensive plan in every instance. Accordingly, the City Commission complied with applicable law and, therefore, the manner by which it approved the zoning map amendment did not exceed its statutory powers.

*Nicholasville Code of Ordinances Chapter 26.*

Second, Appellants argue the Code of Ordinances requires a developer to submit a storm water management plan before real estate development can be approved, which Tall Oak did not do. However, we agree with the circuit court that Appellants misread the applicable ordinances.

-11-

Nicholasville Code of Ordinances Chapter 26, titled "STORM WATER MANAGEMENT[,]" provides detailed instructions for storm water management plan proposals and when such plans are required. *See* NICHOLASVILLE, KY., CODE OF ORDINANCES ch. 26 (2019). Article II, Division 6 of Chapter 26 is titled "REQUIREMENTS FOR STORM WATER MANAGEMENT PLAN APPROVAL[,]" NICHOLASVILLE, KY., CODE OF ORDINANCES ch. 26, art. II, div. 6 (2019). Appellants argue two sections of Division 6 – Sec. 26-270 and Sec. 26-271 – required Tall Oak to submit storm water management plan alongside its development plan.

Division 6, Sec. 26-270, titled "Storm water management plan required for all developments[,]" provides:

> (a) *No application for development* will be approved unless it includes a storm water management plan detailing in concept how runoff and associated water quality impacts resulting from the development will be controlled or managed. This plan must indicate whether storm water will be managed on site or off site and, if on site, the general location and type of practices.
>
> (b) The storm water management plan(s) shall be referred for comment to all other interested agencies, and any comments must be addressed in a final storm water management plan. This final plan must be signed by a licensed professional engineer (PE), who will verify that the design of all storm water management practices meet the submittal requirements outlined in the BMP manual. *No building permit, approved construction plans, or grading permit* shall be issued

-12-

until a satisfactory final storm water management plan, or a waiver thereof, shall have undergone a review and been approved by the planning commission after determining that the plan or waiver is consistent with the requirements of this article.

Nicholasville, Ky., Code of Ordinances ch. 26, art. II, div. 6, § 26-270 (2019) (emphasis added). Division 6, Sec. 26-271, titled "Storm water management concept plan requirements," provides:

> (a) A storm water management concept plan shall be required with *all permit applications* and will include sufficient information (e.g., maps, hydrologic calculations, etc.) to evaluate the environmental characteristics of the project site, the potential impacts of all proposed development of the site, both present and future, on the water resources, and the effectiveness and acceptability of the measures proposed for managing the storm water generated at the project site. The intent of this conceptual planning process is to determine the type of storm water management measures necessary for the proposed project, and ensure adequate planning for management of storm water runoff from future development. To accomplish this goal the following information shall be included in the storm water management concept plan;
>
> > (1) A map (or maps) indicating the location of existing and proposed buildings, roads, parking areas, utilities, structural storm water management and sediment control facilities. The map(s) will also clearly show proposed land use with tabulation of the percentage of surface area to be adapted to various uses; drainage patterns; locations of utilities, roads and easements; the limits of clearing and grading; a written description of the site plan

and justification of proposed changes in natural conditions may also be required.

(2) Sufficient engineering analysis to show that the proposed storm water management measures are capable of controlling runoff from the site in compliance with this article and the specifications of the BMP manual.

(3) A written description of the required maintenance burden for any proposed storm water management facility.

(b) For development or redevelopment occurring on a previously developed site, an applicant shall be required to include within the storm water management concept plan measures for controlling existing storm water runoff discharges from the site in accordance with the standards of this article to the maximum extent practicable.

NICHOLASVILLE, KY., CODE OF ORDINANCES ch. 26, art. II, div. 6, § 26-271 (2019) (emphasis added).

The circuit court determined that the applicable ordinances, 26-270 and 26-271, do not apply at this stage of the development process, in view of other provisions of Chapter 26 of the Nicholasville Code of Ordinances. We find no error in this conclusion.

Chapter 26, Article II, Division 2 is titled "PERMIT PROCEDURES AND REQUIREMENTS[,]" and Sections 26-220 and 26-221 reveal when in the development process a developer is required to submit a storm water management plan. Division 2, Sec. 26-220, titled "Permit required[,]" provides:

-14-

No land owner or land operator shall receive any of the building, grading or other land development permits required for *land disturbance activities* without first meeting the requirements of this article prior to commencing the proposed activity.

NICHOLASVILLE, KY., CODE OF ORDINANCES ch. 26, art. II, div. 2, § 26-220 (2019)

(emphasis added). Division 2, Sec. 26-221, titled "Application requirements"

provides as relevant:

(a) Unless specifically excluded by this article, any land owner or operator desiring a permit for *land disturbance activity* shall submit to the planning commission a permit application. A copy of the building or grading permit application form can be obtained from the planning commission office.

(b) Unless otherwise exempted by this article, *a building permit, approved construction plans, or grading permit application* must be accompanied by the following in order that the permit application be considered: a storm water management plan (SWMP); a maintenance agreement; and all applicable nonrefundable permit review fees.

NICHOLASVILLE, KY., CODE OF ORDINANCES ch. 26, art. II, div. 2, § 26-221(a) &

(b) (2019) (emphasis added).

Reading Chapter 26 as a whole, we agree with the circuit court's determination that a storm water management plan is not required at the rezoning stage of the development process. Instead, a developer is required to submit their plan later in the process; specifically, the plan is a prerequisite for land disturbance activity, rather than initial approval of a development plan or approval of a

-15-

rezoning request.  *See id*.  We agree with the circuit court that the City

Commission's decision was not arbitrary.

## **CONCLUSION**

Based on the foregoing, we affirm the Jessamine Circuit's December

22, 2021 Order affirming the Nicholasville City Commission.


ALL CONCUR.


BRIEF FOR APPELLANTS:

T. Bruce Simpson, Jr.
Lexington, Kentucky

BRIEF FOR APPELLEES
NICHOLASVILLE BOARD OF
COMMISSIONERS, AND THE CITY
OF NICHOLASVILLE:

Clifford H. Ashburner
Suzanne M. Marino
Louisville, Kentucky

BRIEF FOR APPELLEE TALL OAK,
LLC:

Bruce E. Smith
Nicholasville, Kentucky