David K. KAREM, Special Administrator of the Estate of Jack M. Bryant, Deceased, and Schroder's Express, Inc. of Kentucky, Appellants,

v.

Thomas E. BENNETT, Appellee.

Court of Appeals of Kentucky.

May 12, 1972.

Armer H. Mahan, Jr., Davis & Mahan, Louisville, for appellants.

Joseph J. Golden, Louisville, Hanish & Hanish, Louisville, for appellee.

JAMES M. LASSITER, Special Commissioner.

This appeal involves the adequacy of jury instructions pertaining to a rather simple and uncomplicated automobile vs. tractor-trailer accident which occurred at the intersection of Dixie Highway and Ralph Avenue in Jefferson County. The intersection is controlled by electric traffic signals. Dixie Highway runs generally in a north-south direction with two lanes for each direction of travel at the point of the collision. The speed limit is 35 miles per hour. The accident occurred shortly after midnight. The pavement was wet, although the evidence is conflicting as to the intensity of the rain at the actual time of the collision.

Bennett (appellee) was proceeding south on Dixie Highway in the outside or westernmost south-bound lane of Dixie Highway. The tractor-trailer owned by Schroder's Express, Inc. of Kentucky (appellant) had approached the intersection from the south and was in the westernmost north-bound lane of Dixie Highway. After stopping for a red light, the tractor-trailer turned to its left to proceed west on Ralph Avenue and across the lane of travel used by Bennett and other traffic going south on Dixie Highway. The driver of the tractor-trailer died, from causes unrelated to the accident, prior to the taking of any competent statement or proof from him as to the circumstances of the accident. Bennett's automobile collided with the right rear tire of Schroder's trailer at a point nearly on the centerline dividing the two south-bound lanes of Dixie High-

way. The evidence indicates that each of the two travel lanes for Dixie Highway is ten to twelve feet in width. The combined length of the tractor-trailer unit was fifty feet. The speed of the tractor-trailer in negotiating its turn at the intersection and across the south-bound lanes of Dixie Highway was approximately five miles per hour.

There was a genuine—and we think critical—dispute in the evidence as to the speed and manner in which Bennett was operating his automobile at and immediately prior to the time of the collision. Bennett insists he was traveling at a speed of 25 to 30 miles per hour, and he further estimates that the tractor-trailer began its left turn across his lane of traffic when he (Bennett) was 40 feet from the intersection. The testimony of Bennett is disputed by a witness who was driving his vehicle south and immediately behind Bennett on Dixie Highway at the same time. This impartial and disinterested witness related that he had been driving his small truck south on Dixie Highway some several blocks and for a mile or more north of the point of the collision at a speed of 30 to 35 miles per hour when Bennett passed him at a speed estimated by the witness to be 50 to 60 miles per hour. Bennett then stopped for an electric traffic signal; and the witness, upon reaching the intersection as that light changed, passed Bennett. The witness further testified that Bennett repassed him at a speed estimated to be 40 to 50 miles per hour. The witness then estimated that when Bennett was 200 to 250 feet from the Dixie Highway-Ralph Avenue intersection the tractor-trailer began its left turn. At that time, he estimated Bennett's speed had again reached 50 to 60 miles per hour. The witness stated that Bennett's automobile collided with the right rear tire of the trailer when it had practically cleared the south-bound lanes of Dixie Highway and only the rear six feet of the trailer were in the outside south-bound lane at the time of the collision. This witness also testified that he did not observe the brake lights on Bennett's automobile acti-

vate prior to the instant of collision, although the tail lights on Bennett's automobile were working in a normal fashion. This witness also said that Bennett asserted immediately after the collision that the driver of the tractor-trailer had violated a red light, indicating that Bennett had originally thought the tractor-trailer had come straight across the intersection on Ralph Avenue.

At the close of the evidence, both parties tendered written instructions which defined the duties of the drivers of both vehicles, and each included an instruction on contributory negligence on the part of Bennett which would, if the jury so found, defeat his right to recover. The record discloses that at the time of the conference in chambers between the presiding judge and the attorneys in which the form of the instructions was discussed, the trial judge rejected all offered instructions and then dictated the full set of written instructions to be given. It is conceded by both parties that the presiding judge dictated a contributory negligence instruction affecting the right of Bennett to recover in the event the jury found that Bennett was negligent and that his negligence either caused or contributed to cause and bring about the accident when it would not have otherwise occurred. After dictating the set of instructions to the court reporter, the trial judge requested, and the attorneys for both sides agreed, that in the interest of time the judge would be permitted to instruct the jury orally by reading from the instructions offered by counsel with interlineations which had been made by the trial judge; it being anticipated, of course, that the instructions as read by the trial judge to the jury prior to summation by counsel would coincide exactly with the instructions as dictated to the reporter. Apparently, neither side requested or desired that the closing arguments be reported since the reporter was permitted to type the instructions as dictated by the trial judge during the time the attorneys were making their closing arguments. At the conclusion of the argu-

ments, the reporter had finished typing the set of instructions which had been dictated by the trial judge in the presence of the attorneys, and upon the completion of the closing arguments the typed instructions were furnished to the jury, apparently without examination by either the trial judge or the attorneys. The jury returned a verdict for Bennett, the amount of which is well within the limits of his proof if he was entitled to recover at all.

After the verdict was returned and the jury discharged, and prior to the filing of a motion for new trial by Schroder, it was discovered for the first time that through inadvertence and oversight the reporter had failed to include in the written instructions given to the jury the contributory negligence instruction which would defeat the right of Bennett to recover if the jury found that any negligence on the part of Bennett either caused or contributed to cause and bring about the accident when it would not have otherwise occurred. The instructions furnished the jury did, however, include the following instruction:

"4. If you believe from the evidence that the plaintiff, Thomas E. Bennett, violated any one or more of the above duties and that such violation was the sole and proximate cause of the collision, then you will find for the defendants."

Bennett claims on this appeal that:

1. He was entitled to a directed verdict.

2. Even if he was not entitled to a directed verdict, the inadvertent omission of the tendered contributory negligence instruction in the final form of the instructions was harmless inasmuch as the instruction had been orally recited by the trial judge in the charge to the jury and that counsel for Schroder had argued the effect of the instruction to the jury in his summation. (Since the closing arguments were not reported, the record does not reflect whether this is true, but we will assume that such is the case.)

3. The instruction quoted above which was included in the final form of the instructions given to the jury substantially satisfies any required submission on the question of contributory negligence.

We believe beyond question that the evidence of the disinterested witness who was in a position to and did observe the Bennett car for a considerable distance north of and up to the point of the collision was sufficient to create an issue of fact as to whether excessive speed or lack of proper lookout on the part of Bennett was a causative or contributing factor in bringing about the collision. It would seem obvious that the instruction quoted above does not correctly state the defense of negligence on the part of Bennett which only *contributed* to cause and bring about the accident, since it is limited to the negligence of Bennett being the *sole* cause of the collision.

We then come to the proposition of whether a purely clerical error on a material issue which must be included in written instructions to the jury can be or is waived either by an oral charge by the trial judge or by argument of counsel in their summation to the jury. We believe this must be answered in the negative. CR 51(2) provides as follows:

"After considering any tendered instructions and motions to instruct and before the commencement of the argument, the Court shall show the parties the written instructions it will give the jury, allowing them an opportunity to make objections out of the hearing of the jury. *Thereafter, and before argument to the jury, the written instructions shall be given.*" (Emphasis ours.)

█ There is no provision in our procedural rules for oral charges to the jury. We believe it would literally open a Pandora's box to make any exception to the strict requirement that the total charge to the jury be in writing as required by CR 51. Since the requirements of the rule were not complied with, however innocent and understandable the failure was, the judgment for Bennett must be reversed. The contention by Bennett that Schroder cannot assign the omission as error because timely objection was not made before the Court instructed the jury is without merit, since CR 51(3) specifically provides that a party may assign as error the failure to give an instruction if he has ". . . fairly and adequately presented his position by an offered instruction . . .".

The judgment is reversed for a new trial.

All concur.