Elbert Phillip LONG, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Dec. 9, 1977.

---

7. For example see KRS 67.080, 70.540, 70.570, 97.791, 100.117, 100.201 and others too numerous to mention.

Jack Emory Farley, Public Defender, Erwin W. Lewis, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Raymond M. Edelman, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

On a jury trial, Elbert P. Long was found guilty of murder and attempted rape. In conformity with the jury's verdict, the trial court sentenced Elbert to life imprisonment on the murder conviction and five years' imprisonment on the conviction of attempted rape. The trial court ordered Elbert to serve the sentences consecutively. From that judgment, Elbert prosecutes this appeal.

There are other questions, but the principal issue presented for decision is whether Elbert made known to the trial court the specific grounds for his objection to the instructions during the trial.

In order that the issue be resolved, this court briefly summarizes the evidence upon which the jury made its determination.

On November 16, 1976, at approximately 9:40 A.M., Elbert went to the Owensboro-Daviess County Animal Shelter to "look at some dogs." Mrs. Connie White was in charge. Shortly after Elbert arrived at the shelter he led or pushed Connie at gun point into the bathroom with his left hand over her mouth and holding in his right hand a gun pointed against her ear. Elbert told Connie, "Just do as I say and everything will be alright." He then ordered Connie to take her clothes off. She took her jacket and jumpsuit off and "undid" her bra. At that point a truck arrived. Elbert ordered Connie to put her clothes on. He then went to the office and Connie followed him. The truck driver was William C. Damron, Jr., Connie's father, who was dog warden of Daviess County. Connie's demeanor and her conduct alerted Damron that something was wrong. He said to Connie, "What's the matter with you?" Subsequently, Connie took her father outside and told him of Elbert's attempted rape. Damron went to his truck and procured a .22 caliber pistol. He returned to the office. A struggle between Damron and Elbert took place in the doorway. Elbert shot Damron with a .38 caliber pistol, seized Damron's pistol and fled the scene. Shortly thereafter Damron died as a result of the gunshot wound.

Other testimony offered by the Commonwealth was that of the officers who made the investigation. Also, there was the testimony of two witnesses who had a brief glimpse of the struggle, and heard the shot.

At the close of the Commonwealth's case, Elbert's counsel moved for a directed verdict. The trial court overruled the motion and Elbert testified in his own behalf.

As the custom is in most rape cases, the victim seduces the defendant whose intentions are always as pure as the "driven snow." Thus, it was with Elbert. He stopped by the animal shelter to look at some dogs. He testified that Connie showed him some dogs and later propositioned him in this manner: ". . . and

she came back there and she had kind of a smile and she said, 'You want more than to look at dogs, don't you?' I said 'No' and I left." Elbert testified that he saw Damron get a pistol from the truck, come back to the office and threaten to kill him. Elbert testified that when Damron "cocked" his gun he shot Damron, took his gun and fled.

The court now directs its attention to Elbert's argument that the trial court erred by placing improper qualifications upon his privilege of self-protection in its instruction to the jury. The record reveals that at the conclusion of all the evidence the trial court stated, "I have the instructions about ready . . . but I do want a chance to go over with the attorneys some things . . . ."

While court and counsel were in chambers and out of the hearing of the jury Elbert's counsel stated, "I would like to tender the self-defense instruction." In response the court said, "Let the record show that no one has any objections to the instructions given except insofar as on behalf of the defendant (Elbert) as the court refuses to give the defendant's Instruction I." Elbert's tendered instruction is as follows:

"If at the time the defendant shot William C. Damron as mentioned in Instruction I he believed that William C. Damron was then and there about to use physical force upon him, he was privileged to use such physical force against William C. Damron as he believed to be necessary in order to protect himself from it.

'Physical force' means force used upon or directed toward the body of another person."

Elbert concedes that his tendered instruction was not proper in that it instructed only as to the privilege to use physical force. It appears to this court that Elbert's tendered instruction on self-protection is copied verbatim from Palmore, *Kentucky Instructions to Juries*, Sec. 10.01. That instruction deals with the use of non-deadly force. The defense of self-protection is defined in KRS 503.050, which distinguishes deadly force and non-deadly force. Under the facts of this case, where both Elbert and Damron were armed with pistols and engaged in an apparent "shoot-out," then the self-protection instruction given by the trial court was in compliance with the definition of self-protection involving a deadly force as set out in KRS 503.050. Elbert's tendered instruction did not impose any qualification on the justification for self-protection. The instruction on self-protection given by the trial court included the qualification. Thus, Elbert received an unexpected bounty under the instructions given by the trial court.

■ This court is of the opinion that Elbert's objection to the trial court's qualified instruction on self-protection did not comply with the provisions of RCr 9.54(2), which provides:

"No party may assign as error the giving or failure to give an instruction unless he fairly and adequately presented his position by an offered instruction or by a motion, or unless he makes objection before the court instructs the jury, *stating specifically the matter to which he objects and the ground or grounds of his objection.*" (Emphasis added).

It is obvious that under the facts presented in the trial of this case Elbert's tendered instruction was improper. It certainly was not the law of the case. It touched neither top, side nor bottom the facts presented for the jury's determination. Had the trial court given Elbert's tendered instruction, it would have been an error of some magnitude.

This court expects strict compliance with the rules it promulgates. In addressing the matter of strict compliance as relates to the requirements of the provisions of RCr 9.54(2), this court noted:

". . . it is now the duty of the accused to assure himself that the jury is properly instructed at the time of submission. If the instructions do not meet with his approval, then he must timely offer other instructions or make known to the trial court his objection to those given, *together with the ground support-*

*ing his objection."* (Emphasis added). *Hopper v. Commonwealth,* Ky., 516 S.W.2d 855 (1974).

This court is of the opinion that when Elbert tendered an instruction containing no qualification on his theory of self-protection, and did nothing further to clarify his objections to the self-protection instruction offered by the trial court, his tendered instruction did not "fairly and adequately" present his position to the trial court. Because the trial court had no opportunity to rule upon the matter, there was no error.

Elbert next argues that the prosecution failed to establish the element of specific intent to rape beyond a reasonable doubt. At the close of all the evidence Elbert failed to renew his motion for a directed verdict of acquittal. This court has recently held:

"A motion for directed verdict made at the close of the plaintiff's (here the Commonwealth's) case is not sufficient to preserve error unless renewed at the close of all the evidence, because once the defense has come forward with its proof, the propriety of a directed verdict can only be tested in terms of all the evidence.

If there has been no motion for a directed verdict at the close of all the evidence, it cannot be said that the trial judge has ever been given an opportunity to pass on the sufficiency of the evidence as it stood when finally submitted to the jury. In effect, therefore, a motion for directed verdict made only at the close of one party's evidence loses any significance, once it is denied and the other party, by producing further evidence, chooses not to stand on it". *Kimbrough v. Commonwealth,* Ky., 550 S.W.2d 525 (1977).

In any event, this court is of the opinion that Elbert's action in forcing Connie into the bathroom at gun point, cornering her, kissing her, and ordering her to remove her clothes, would support a jury's belief beyond a reasonable doubt that he intended to rape Connie.

There is absolutely no merit to Elbert's contention that when he was cross-examined the Commonwealth's Attorney elicited evidence of another crime. The record is clear that when the Commonwealth's Attorney asked Elbert a question concerning the gun he had in possession: "Why didn't you buy it?", Elbert's counsel objected. The objection was overruled. Elbert answered, "I'm not allowed to carry a gun." At this point the trial court asked Elbert's counsel and the Commonwealth's Attorney to approach the bench. After the conference the Commonwealth's Attorney never pursued the inquiry. During the entire trial of this case there was not a shred of evidence that tended to show other specific criminal acts of Elbert.

The jury heard all the evidence, the instructions of the court, and observed the demeanor of the witnesses. Based upon the evidence and the law, the jury rendered its verdict. Under these circumstances this court will not substitute its judgment for that of the jury.

The judgment is affirmed.

All concur.