**SAND HILL ENERGY, INC., Appellant,**

v.

**Brenda SMITH, Administratrix of the Estate of Tommy Smith; and Ford Motor Company, Appellees,**

and

**Brenda Smith, Administratrix of the Estate of Tommy Smith, Appellant,**

v.

**Sand Hill Energy, Inc.; and Ford Motor Company, Appellees,**

and

**Ford Motor Company; and Mid–East Ford Mercury, Inc., Appellants,**

v.

**Brenda Smith, Administratrix of the Estate of Tommy Smith; and Sand Hill Energy, Inc., Appellees.**

No. 2000–SC–0444–DG, 1999–SC–1028–DG, 1999–SC–1029–DG.

Supreme Court of Kentucky.

Aug. 26, 2004.

Clint Harris, Manchester, Counsel for Sand Hill Energy, Inc.

Rickey D. Bailey, Mary Latta Lee, R. Scott Madden, Manchester, Ned Miltenberg, Center for Constitutional Litigation, P.C., Washington, D.C., Roy Glenn Collins, McKinnley Morgan, Manchester, Sharon K. Allen, McKee, Counsel for Brenda

Smith, Administratrix of the Estate of Tommy Smith.

John A. Rogovin, Brian P. Brooks, Jonathan D. Hacker, Walter E. Dellinger, III, Matthew M. Shores, O'Melveny & Myers, Washington, D.C., B. Todd Thompson, Sallie Jacobs Stevens, R. Thaddeus Keal, Thompson, Miller & Simpson, P.L.C., Louisville, Amy Crosland Sullivan, Arlington, VA, Counsel for Ford Motor Company.

John A. Rogovin, Brian P. Brooks, O'Melveny & Meyers, Washington, D.C., B. Todd Thompson, Thompson, Miller & Simpson, Louisville, Amy Crosland Sullivan, Arlington, VA, Counsel for Mid–East Ford Mercury, Inc.

Virginia Hamilton Snell, Wyatt, Tarrant & Combs, Louisville, Evan M. Tager, Mayer, Brown & Platt, Washington, D.C., Hugh F. Young, Jr., Product Liability Advisory Council, Inc., Reston, VA, Jay C. Johnson, Mayer, Brown, Rowe & Maw, Robin S. Conrad, National Chamber Litigation Center, Inc., Washington, D.C., Counsel for Amicus Curiae, Product Liability Advisory Council, Inc.

Bridget H. Papalia, Brown, Todd & Heyburn, Louisville, Henry P. Sorett, Cynthia D. Craig, Brickley, Sears & Sorett, Boston, MA, Counsel for Amicus Curiae, Equitable Resources, Inc.

Bridget H. Papalia, Brown, Todd & Heyburn, Louisville, Henry P. Sorett, Cynthia D. Craig, Brickley, Sears & Sorett, Boston, MA, Counsel for Amicus Curiae, Equitable Production Company.

Bridget H. Papalia, Brown, Todd & Heyburn, Louisville, Counsel for Amicus Curiae, Associated Industries of Kentucky.

Bridget H. Papalia, Brown, Todd & Heyburn, Louisville, Counsel for Amicus Curiae, Kentucky Oil and Gas Association.

Opinion of the Court by Justice KELLER.

## I. INTRODUCTION, PROCEDURAL BACKGROUND, AND ISSUE

In a 4–3 plurality decision in *Sand Hill Energy, Inc. v. Ford Motor Company,*[1] this Court reversed a decision of the Court of Appeals and reinstated a $3 million compensatory award and $15 million of the original $20 million punitive damages award in this wrongful death action. When *Sand Hill I* became final, Ford Motor Company ("Ford") filed a petition for a writ of certiorari before the United States Supreme Court, arguing that the $15 million punitive damages award was unconstitutional. While Ford's petition was pending, the United States Supreme Court decided *State Farm Mutual Insurance Co. v. Campbell,*[2] in which it invalidated a $145 million punitive damages award in a Utah case involving bad faith and fraud in the context of an insurance settlement. Thereafter, the United States Supreme Court granted Ford's petition for certiorari, vacated *Sand Hill I,* and remanded the matter to this Court "for further consideration in light of" *State Farm.* Because Ford's petition for certiorari addressed only the constitutionality of the punitive damages award, Ford has since paid the full value of the compensatory damages award, with interest—a total amount of $5,596,425.00—and the parties agree that the only issue remaining before the Court is the viability of the $20 million punitive damages award.

After reviewing *State Farm* and the evidence of the defendant's out-of-state con-

---

1. Ky., 83 S.W.3d 483 (2002) ["*Sand Hill I* "].

2. 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003) ["*State Farm* "].

duct presented to the jury in Sand Hill, we vacate the punitive damages award and remand the case for a new determination of the amount of punitive damages because the trial court's jury instructions failed to include a limiting instruction concerning extraterritorial punishment.

## II. ANALYSIS

### A. STATE FARM AND EXTRATERRITORIALITY

In *State Farm*, the plaintiffs pursued punitive damages in their bad faith claim on the basis that the insurance company employed a scheme to cap payouts on the company's claims. To prove this scheme the plaintiffs presented testimony about State Farm's fraudulent practices occurring nationwide. The trial court determined that such evidence was admissible for the determination of whether State Farm's conduct was reprehensible. After deliberation, the jury returned a punitive damages award of $145 million against State Farm.

The United States Supreme Court ("Supreme Court") granted State Farm's petition for certiorari, reversed the decision of the Supreme Court of Utah, which had reinstated the punitive damages award, and remanded the case for further proceedings with regard to punitive damages. Citing its previous decisions in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*,[3] *BMW of North America, Inc. v. Gore*,[4] *TXO Production Corp. v. Alliance Resources Corp.*,[5] and *Pacific Mutual Life Insurance Company v. Haslip*,[6] the Supreme Court stated that although the States "possess discretion over the imposition of punitive damages, ... the Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments."[7] The Supreme Court held that the punitive damages award in *State Farm* violated the Due Process Clause of the Fourteenth Amendment as it was grossly excessive and expressed particular concern over the evidence of State Farm's out-of-state/extraterritorial conduct:

> Lawful out-of-state conduct may be probative when it demonstrates the deliberateness and culpability of the defendant's action in the state where it is tortious, but that conduct must have a nexus to the specific harm suffered by the plaintiff. A jury must be instructed, furthermore, that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred.[8]

In the Supreme Court's opinion, the conduct upon which the punitive damages award was based bore no relation to the plaintiffs' harm, which resulted in the "case ... [being] used as a platform to expose, and punish, the perceived deficiencies of State Farm's operations throughout the country,"[9] instead of being used to condemn State Farm for its conduct towards the plaintiffs.

3. 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).

4. 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

5. 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993).

6. 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

7. *State Farm Mutual Insurance Co. v. Campbell*, 538 U.S. 408, 412, 123 S.Ct. 1513, 1517, 155 L.Ed.2d 585, —— (2003).

8. 538 U.S. at 422–423, 123 S.Ct. 1513.

9. 538 U.S. at 420, 123 S.Ct. 1513.

The Supreme Court held that the punitive damages award was unreasonable and irrational and remanded the case for further proceedings with appropriate instructions.

## B. EVIDENCE AND ARGUMENT IN THE RECORD CONCERNING FORD'S EXTRATERRITORIAL CONDUCT

■ Similar to what occurred in *State Farm*, the jury in Sand Hill considered Ford Motor Company's conduct on a nationwide scale in arriving at the punitive damages award of $20 million. The jury heard testimony regarding the number of vehicles sold nationwide that contained the "defective" transmission (6.5–7 million), the number of reports nationwide of similar incidents of inadvertent shifts from "park" to "reverse" (by 1980 the count was 23,000), and the number of individuals who were killed by such incidents nationwide (hundreds). Counsel for the plaintiff advised the jury in closing that "we have to make them pay" and proceeded to discuss the number of "defective" Ford transmissions that were "on the road." It is clear that the jury was encouraged to punish Ford for its conduct throughout the country.

In applying the analysis set forth in *State Farm*, we find that the nexus between the conduct and the specific harm to the plaintiff in Sand Hill is evident from the fact that the incidents were of a similar nature. While the jury may evaluate those incidents in determining Ford's culpability, a new trial on the amount of punitive damages is required since the jury instructions contained no limitations on extraterritorial punishment.

## C. PRESERVATION

One important question that this Court must answer before remanding the case is whether Ford fairly and adequately presented its position regarding extraterritoriality to the trial court via its four (4) page proposed punitive damage instruction.

On remand from the United States Supreme Court, Ford's Supplemental Brief contains passing comments upon the overall constitutional inadequacy of the punitive damages instructions. However, the only instructional error that Ford pursues in support of relief concerns the trial court's failure to instruct the jury that it could not punish Ford for its conduct outside the Commonwealth of Kentucky. Ford made this same argument in its earlier brief in the case. The punitive damages instruction that the trial court gave to the jury provided as follows:

You have found for the Estate of Tommy Smith against Ford Motor Company and determined that the Estate was entitled to a sum or sums of money for compensatory damages. If you are further satisfied from the evidence that Ford Motor Company acted toward Tommy Smith with malice, you may in your discretion award punitive damages against Ford Motor Company in addition to the damages you have already awarded. The plaintiff must prove malice with clear and convincing evidence, and you may consider the evidence introduced in the first phase of this trial as well as the second phase of this trial.

As used in this instruction:

(a) malice means either conduct which is specifically intended by Ford Motor Company to cause tangible or intangible injury to the plaintiff or

(b) conduct that is carried out by Ford Motor Company both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm.

If you award punitive damages in determining the amount thereof, you should consider the following factors.

(a) The likelihood at the relevant time that serious harm would arise from Ford Motor Company's misconduct;

(b) The degree of Ford Motor Company's awareness of that likelihood;

(c) The profitability of the misconduct to Ford Motor Company;

(d) The duration of the misconduct and any concealment of it by Ford Motor Company;

(e) Any actions by Ford Motor Company to remedy the misconduct once it became known to Ford Motor Company.

On the final day of trial, Ford tendered to the trial court a seventeen (17) page document captioned "Punitive Damages Instructions Tendered by Defendant, Ford Motor Company," which contained two (2) proposed punitive damages instructions. The first page of the document explained that Proposed Instruction A addressed Ford's liability for punitive damages and Proposed Instruction B addressed how the jury should determine the amount of punitive damages. Two (2) versions of each of the instructions were included: a "court copy" that included citations to relevant authorities followed by a "clean copy" for submission to the jury. The four (4) page "court copy" of Ford's Proposed Instruction B stated:

If you determine that punitive damages should be awarded against Ford, then you shall assess the sum of the punitive damages. In determining the amount of punitive damages to be assessed, you should consider the following factors:

(a) the likelihood, at the time Ford designed the automatic transmission system for the F–250 pickup truck involved in this case, that serious injury would arise from Ford's misconduct in designing that system;

(b) the degree of Ford's awareness, if any, of that likelihood of injury, and its motivation;

(c) the profitability of the misconduct to Ford;

(d) the duration of Ford's misconduct and whether it attempted to conceal such misconduct; and

(e) any actions by Ford to remedy the misconduct, once it became known to Ford.

You must remember that the purpose of punitive damages is not to award the Estate of Tommy Smith a windfall, but to punish Ford for its misconduct and to deter Ford and others from similar conduct in the future. Society would be harmed by, and you must not award, punitive damages in any amount larger than what is needed to accomplish this purpose.[6] You must not award punitive damages for any other purpose. You must award only the amount that you find, by clear and convincing evidence, is necessary to impose appropriate punishment and deterrence for the wrongful conduct that you find to have occurred in this case.

Ordinarily, it constitutes sufficient punishment and deterrence to deprive a corporate defendant of the monetary gain realized from the wrongful conduct of its employees.[7] Therefore, if you decide to award punitive damages in this case, the maximum amount you may award is the amount of money saved by Ford by not utilizing the alternative designs proposed by the plaintiff in similar vehicles sold in Kentucky, less the amount of compensatory damages you have awarded.[8]

In determining the amount of punitive damages that is necessary for punishment and deterrence, you may consider

only Ford's wrongful conduct that has, or has had, an impact on the citizens of Kentucky. You may not award any punitive damages for the purpose of punishing Ford relative to the sale of vehicles in other states, or for the purpose of changing Ford's conduct outside the state of Kentucky.[9]

The purpose of compensatory damages is to compensate the plaintiff and make the plaintiff whole. However, a substantial award of compensatory damages also has the effect of punishing and deterring misconduct, without the necessity of awarding punitive damages. Therefore, in determining the amount of punitive damages necessary for appropriate punishment and deterrence, you must consider the punishment and deterrent effect associated with the monetary award paid by Ford for the compensatory damages alone.[10]

In determining the amount of punitive damages, the most important factor to consider is the reprehensibility or blameworthiness of Ford's conduct. In evaluating the reprehensibility of Ford's conduct, you must consider, for example, (1) the extent to which the product complied with industry custom and practice, and (2) the absence of any objective test from which Ford could determine in advance whether the automatic transmission control system was defective under Kentucky law, and (3) any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages.[11]

Ford's wealth, size or financial condition should play no part in a jury's determination of the amount of punitive damages that should be awarded.[12]

With these Instructions in mind, and using the attached Verdict Form, you will award against Ford that sum of money, if any, you find by clear and convincing evidence should be awarded as punitive damages.

General Authorities: *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); *Miller's Bottled Gas, Inc. v. Borg–Warner Corp.*, 817 F.Supp. 643 (W.D.Ky.1993); *Hanson v. American Nat'l Bank & Trust Co.*, Ky., 865 S.W.2d 302 (1993); *Wittmer v. Jones*, Ky., 864 S.W.2d 885 (1993); and KRS 411.186.

6 *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); Malcolm E. Wheeler, (*A Proposal for Further Common Law Development of the Use of Punitive Damages in Modern Product Liability Litigation*), 40 Ala. L.Rev. 919, 947 (1989).

7 A corporation's liability is entirely vicarious and predicated on the wrongdoing of its employees or agents. *See, e.g., Uniform Law Commissioners' Model Punitive Damages Act*, § 6, Comments at 12 (Discussion Draft, April 4, 1996) ("*Discussion Draft*"). Issues relating to when a corporation will be held liable for punitive damages based upon the acts of its employees or agents are themselves ripe for common law development. *See Uniform Law Commissioners' Model Punitive Damages Act*, § 6(c) (Approval Draft, July 1996) ("*Approval Draft*") (legal entity liable for punitive damages based on wrongful acts of employee only if the wrongful conduct is committed by an officer, director, or agent with policymaking authority).

8 See generally *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Uniform Law Commissioner's Model Punitive Damages Act, § 6(c) (Approval Draft, July 1996); American Law Institute, Reporters' Study: Enterprise Re-

sponsibility for Personal Injury, Vol. II, at 254 (1991); Malcolm E. Wheeler, (*A Proposal for Further Common Law Development of the Use of Punitive Damages in Modern Product Liability Litigation* ), 40 Ala. L.Rev. 919, 947 (1989).

9 *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

10 See Prosser and Keeton on Torts § 4 at 25–26 (one reason for imposing tort liability is to provide incentive to avoid future harm; this "idea of prevention shades into punishment of the offender").

11 *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996).

12 *Hensley v. Paul Miller Ford, Inc.,* Ky., 508 S.W.2d 759, 764 (1974); *Givens v. Berkley,* 108 Ky. 236, 56 S.W. 158 (1900); *Shields' Adm'rs v. Rowland,* 151 Ky. 822, 152 S.W. 943 (1913).

The "clean copy" of Ford's Proposed Instruction B omitted footnotes 6–12 and the "general authorities" cited at the end of the "court copy." Ford also tendered a pleading entitled "Memorandum of Defendant, Ford Motor Company, Regarding Necessity of Complete Instructions on Punitive Damages" in which it cited *Taylor v. Kentucky* [10] and *Carter v. Kentucky* [11] for the proposition that "under the United States Constitution[,] 'arguments of counsel cannot substitute for instructions by the court.' "

Shortly after Ford tendered its proposed documents to the trial court, the proceedings were delayed by the tardiness of a juror who had overslept, and the videotaped record shows the trial judge examining the tendered instructions for approximately fourteen (14) minutes before he called a recess. After the jury left the courtroom, the trial court took up a matter concerning the scope of a defense witness's testimony and then asked the attorneys if there was "anything else we can do to expedite the case while we are waiting on the juror ... *other than me read the punitive damage instructions* and look over my notes?"

Later that day, the trial court gave the parties' attorneys copies of the written instructions that it had prepared and permitted them to make objections.[12] At that time, Ford's attorneys did not specifically object to the omission of its extraterritoriality instruction from the trial court's instructions, but did refer in general to the trial court's failure to incorporate the provisions in Ford's proposed instructions:

Mr. Cowgill: *I object to the entire set of instructions to be given by the Court insofar as they fail to incorporate the various components of the instructions tendered by Ford Motor Co. and I will not take the Court's time to itemize all those. We have indicated by our tendered instructions all of those things that we do think are necessary to properly instruct this jury on the matter of punitive damages. The Court has rejected those instructions so that error is preserved,* but turning then to the instructions that the Court has indicated it intends to make, I make these further objections your honor. First of all, I object to the inclusion of paragraph (a), the first prong of the malice definition on the ground that in this case there is no evidence whatsoever that Ford en-

10. 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978).

11. 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981).

12. *See* CR 51(2).

gaged in any conduct which was specifically intended by Ford to cause tangible or intangible injury to this plaintiff. Therefore, that is completely superfluous instruction. It has no relationship to any evidence in this case and I am concerned it may merely confuse the jury regarding the other branch of the malice instruction. This simply isn't a case for malice of the specific intent variety that is included in that first branch of the statutory definition. Secondly, your honor, I do object to the inclusion of (c) profitability of the misconduct of Ford on the ground that there has been no evidence in this case that the alleged misconduct in rendering this defective design was profitable to Ford in any way. Therefore, the inclusion of that factor lacks any foundation in the evidence causes the jury to believe there may be something there that has not been there in the evidence and causes the jury to speculate about something for which it does not have any evidentiary support. There is simply no basis for that. *Finally, your honor, we would reiterate our constitutional objections to these instructions.* I believe those appear in our answer to the complaint in this case. *They are also incorporated in our own proposed set of instructions but to reiterate them in the context of these instructions that the court has prepared, your honor, we would note that these instructions do not pass constitutional muster according to our view and according to the recent decisions of the U.S. Supreme Court because they* do not provide a jury in Kentucky with adequate guidelines as to whether punitive damages should be rendered and also *fail to provide the jury with adequate guidelines as to determining the amount of punitive damages if it determines that punitive damages are in order. In particular, and*

*as regards to the amount of punitive damages these instructions even if they are in accordance with the Kentucky statute fail to give the jury any cap or other adequate guideline or limitation on the amount of any punitive damages award in this case and therefore there is a due process violation by permitting a jury to simply come up with some completely arbitrary number as an award of punitive damages in this case. I believe in context with the instructions that we have tendered, your honor, that adequately reflects all of our objections to the instructions that you have prepared.*

Court: Objections overruled....

Mr. Hawse: Can I just add a couple of other things real quick on our objections, your honor? That phrase flagrant indifference is not defined thus it goes directly to the point that Mr. Cowgill made that there is no guideline to the jury on when punitive damages are justifiable. *The instruction proposed by the Court is devoid in any guidance on what the purpose of punitive damages are and what they are supposed to achieve.* The parallel to that is in the compensatory instructions where as the Court knows that the jury is instructed that the jury to award a fair and reasonable amount that will compensate the plaintiff. We believe that a parallel instruction ought to be given in the punitive damage phase that a fair and reasonable amount that would achieve the purposes of the punitive damages as set out at all, and I don't want to go through all that again because we have already done it. And finally, with regard to paragraph (e) the way this thing reads is the jury can find punitive damages because Ford undertook a remedy. We think that that specific paragraph ought to couch the back conduct as mitigating

as opposed to justifying malice, of finding malice to start with.

Court: These five factors set forth are the five factors for them to consider in determining the amount. That is the most appropriate argument for you to make.

Mr. Hawse: I will do the very best I can with it, your honor.

Court: I am sure you will. Those are the factors that are presented under the statute. Basically, I am following the statute, I am following the Palmore's instructions, I am not at this point in time in any position to rule as far as constitutionality of the statute's concerned. That issue is [not] properly before me. If it were me writing the law on punitive damages, there might be a whole lot more here that is not here but I am not the one doing that.

 Under our Rules of Civil Procedure, the question of preservation turns upon whether Ford's tendered instructions and objections to the trial court's instructions "fairly and adequately presented his position" to the trial court:

(1) At any time before or during the trial, the court may direct the parties to tender written instructions. At the close of the evidence any party may move the court to instruct the jury on any matter appropriate to the issues in the action.

(2) After considering any tendered instructions and motions to instruct and before the commencement of the argument, the court shall show the parties the written instructions it will give the jury, allowing them an opportunity to make objections out of the hearing of the jury. Thereafter, and before argument to the jury, the written instructions shall be given.

(3) *No party may assign as error the giving or the failure to give an instruction unless he has fairly and adequately presented his position by an offered instruction or by motion, or unless he makes objection before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.*[13]

The underlying purpose of CR 51(3) is to "obtain the best possible trial at the trial court level"[14] by "giv[ing] the trial judge an opportunity to correct any errors before instructing the jury."[15] Generally

---

**13.** CR 51 (emphasis added).

**14.** *Cobb v. Hoskins,* Ky.App., 554 S.W.2d 886, 887 (1977). *See also Kentucky Border Coal Co. v. Mullins,* Ky., 504 S.W.2d 696, 698 (1974) ("The purpose of the rule is to ... screen out errors at the trial rather than the appellate level."); *Sparks v. Doe,* Ky., 379 S.W.2d 252, 256 (1964) ("The object of CR 51 is to smoke out all impurities beforehand, to the end that the jury will be properly instructed and the case tried but once."); *Sams v. Sigmon Ikerd Co.,* Ky., 280 S.W.2d 515, (1955) (" '[An] underlying objective of these Rules is to secure the best possible trial at the trial court level rather than in the Court of Appeals ....' All too often are instructions simply fertile fields in which errors are planted and the crop is harvested by reversal on appeal.") (quoting Watson Clay, *Kentucky Civil Rules:*

*Practice & Procedure* CR 51, at 458–59 (West Publishing Co.1954)).

**15.** *Ellison v. R & B Contracting, Inc.,* Ky., 32 S.W.3d 66, 72–73 (2000). *See also Burke Enterprises, Inc. v. Mitchell,* Ky., 700 S.W.2d 789, 792 (1985) ("The object of the rules is to require counsel to assist the trial court at arriving at proper instructions and, conversely, to prevent counsel from building reversible error into the case by a general or misleading objection."); *Bruce v. Commonwealth,* Ky., 581 S.W.2d 8, 9–10 (1979) ("CR 51(3) stands for the proposition that the trial court should have any defects in the proposed instructions called to his attention so that he is afforded the opportunity to give the correct instructions."); *Cox v. Hardy,* Ky., 371 S.W.2d 945, 947 (1963) ("The justification for CR 51 is

speaking, if a party's "offered instructions clearly present [the] party's position, no further action is required"[16] to preserve for appellate review an allegation that the trial court erred by failing to give a requested instruction.[17] On a number of occasions, however, in both civil and criminal[18] cases, Kentucky appellate courts have explained that a tendered instruction will not fairly and adequately present the party's position as to an allegation of instructional error when: (1) the omitted language or instruction was not contained in the instruction tendered to the trial court; i.e., when the allegation of error was not presented to the trial court *at all;*[19] (2) the minor differences between

exemplified by this record. In essence that Rule requires the lawyers in a case to assist the judge in giving correct instructions and disallows an ex post facto objection as a means of obtaining a reversal of the judgment on appeal."); *Young v. De Bord,* Ky., 351 S.W.2d 502, 503 (1961) (" 'One important purpose of [CR 51's] requirement is to limit the use of a general objection as a device in securing a subsequent reversal, when the court may well have obviated the error if its attention was directed at the proper time to the proper matter about which the party may subsequently complain on appeal." (quoting Clay, CR 51, cmt. 4, at 458); *Chaney v. Slone,* Ky., 345 S.W.2d 484, 486 (1961) ("The object of [CR 51] is to give the trial court an opportunity to avoid error."); *Brumley v. Richardson,* Ky., 273 S.W.2d 54, 55 (1954) ("The purpose of the rule is to inform the trial judge of possible errors so that he may have an opportunity to correct them.").

16. *Surber v. Wallace,* Ky.App., 831 S.W.2d 918, 920 (1992).

17. *Karem v. Bennett,* Ky., 481 S.W.2d 29, 32 (1972) (citing CR 51 in dismissing argument that objection was necessary to preserve error); *Massengale v. Lester,* Ky., 403 S.W.2d 701, 703 (1966) ("Massengale ... did offer 13 instructions, 11 of which were rejected, and among those rejected were four instructions on the theory of privilege. This was enough to require a proper instruction on that theory[.]").

18. We observe that RCr 9.54(2), the Rule of Criminal Procedure that addresses preservation of jury instruction errors, is nearly identical to CR 51(3). In fact, the only difference between the rules is that the criminal rule employs gender-neutral language:

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

And, between March 1, 1974 and January 1, 1985, RCr 9.54(2) was actually identical to the current version of CR 51(3), which has been in existence since July 1, 1969. After an amendment effective in January 1, 1985, however, RCr 9.54(2) read:

> Any party may tender instructions but no party may assign as error the giving or the failure to give an instruction unless he makes specific objection to the giving or the failure to give an instruction before the court instructs the jury, stating specifically the matter to which he objects and the ground or grounds of his objection.

This Court applied that version of RCr 9.54(2) while it was in effect, *see Chumbler v. Commonwealth,* Ky., 905 S.W.2d 488, 499 (1995); *Commonwealth v. Collins,* Ky., 821 S.W.2d 488, 492 (1992); *Grooms v. Commonwealth,* Ky., 756 S.W.2d 131, 139–40 (1988); *Evans v. Commonwealth,* Ky., 702 S.W.2d 424 (1986), but those cases must be considered in their historical context and are clearly inapplicable to the civil case at bar. In light of the identity between CR 51(3) and the version of RCr 9.54(2) that was in effect between March 1, 1974 and January 1, 1985 and substantial identity between CR 51(3) and the version of RCr 9.54(2) that has been in effect since September 1, 1993, we find our past applications of those versions of RCr 9.54(2) to be instructive to our analysis here.

19. *First Property Management,* Ky., 867 S.W.2d 185, 186 (1993) (observing that "the plaintiff's proposed instruction [which did not employ the language that the appellant claimed had been erroneously omitted from the trial court's instruction] was a poor vehicle upon which to expect the trial judge to arrive at the instruction advocated on ap-

the language of the tendered instruction and the instruction given by the trial court would not call the trial court's attention to the alleged error;[20] or (3) the tendered instruction itself was otherwise erroneous or incomplete.[21]

While the tendered instruction in this case clearly avoids either of the first two (2) pitfalls, it is debatable whether the four (4) page tendered instruction, which in-cluded six (6) separate instructional para-graphs that were not included in the trial court's instructions, was "a fully correct instruction."[22] It is clear from *State Farm* that "a jury must be instructed that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred[,]"[23] and thus the extraterritori-ality admonition contained in the fourth

peal."); *Rainbo Baking Co. v. S & S Trucking Co.*, Ky., 459 S.W.2d 155 (1970) (holding that "under CR 51 [the Appellants] did not ade-quately specify to the trial court the theory upon which they now rely in this court" in a case where "it is demonstrably clear from the . . . language of [the] objection and of the tendered instruction that [Appellants] did not have this requirement in mind and did not bring it to the attention of the trial court."); *Brumley*, 273 S.W.2d at 56 (1954) ("If we should adopt [the view that tendered instruc-tions preserve error], it would not avail the appellant here, because the instructions of-fered by him did not make clear his position on the specific question of right of way; in fact they did not even contain the words 'right of way.' ").

20. *Johnson v. Cormney*, Ky.App., 596 S.W.2d 23, 26 (1980) ("But for the use of the word 'condoned,' those instructions tendered by ap-pellant do not differ substantially from those given by the court, and we find no objection by appellant at trial, or tendered instruction, that could be said to make reasonably clear to the trial court what the appellant had in mind as to his objection to the use of the word 'condoned.' "); *Miller v. Quaife*, Ky., 391 S.W.2d 682, 684 (1965) ("The instruction ten-dered by him does not point up the claimed error; thus he is not in a position to complain now.").

21. *Davis v. Commonwealth*, Ky., 967 S.W.2d 574, 580–81 (1998) ("Having tendered an im-proper [because it was incorrectly identified as a lesser-included offense of murder] in-struction, having advised the trial judge on two occasions that he 'accepted' or had 'no objection' to the trial court's proposed in-structions, and having failed to specifically object to that portion of the instruction of which he now complains, Davis failed to fair-ly and adequately present his position to the

trial court and thereby preserve the issue for review."); *Meyers v. Chapman Printing Co., Inc.*, Ky., 840 S.W.2d 814, 823–24 (1992) ("Although Meyers objected to the 'but for' language, Meyers tendered no description ful-ly describing her view of how to properly frame the same issue . . . . The requirements of CR 51(3) are such that before a party may complain of error in the instructions, the par-ty must accompany the objection with a *fully correct instruction*, or, at the least, must ad-vise the court sufficiently so that the court can understand both the nature of the objection and what needs to be done to correct it.") (emphasis added); *Ball v. E.W. Scripps Co.*, Ky., 801 S.W.2d 684, 691 (1990) ("[T]he pro-posed interrogatories [actually, 41 'jury charges,' 47 pages in length, followed by in-terrogatories, which were a far cry from Ken-tucky's 'bare bones' instructions] were both unsuitable and unreasonable, so completely so that they could not form the basis of a complaint regarding failure to give interroga-tories[.]"); *Long v. Commonwealth*, Ky., 559 S.W.2d 482, 484–85 (1977) (where the defen-dant's tendered self defense instruction in a murder case included only the privilege to use physical force and did not address deadly physical force, the Court held that the ten-dered instruction "did not 'fairly and ade-quately' present his position to the trial court" even though the tendered instruction did omit the questionable "qualifications" in-cluded in the instruction given to the jury). *See also Long v. Smith*, 663 F.2d 18 (6th Cir.1981) (providing additional factual con-text by identifying the "qualifications" in the trial court's self-protection instruction).

22. *Meyers*, 840 S.W.2d at 824.

23. *State Farm Mut. Ins. Co. v. Campbell*, 538 U.S. 408, 422, 123 S.Ct. 1513, 1522, 155 L.Ed.2d 585, ―― (2003).

paragraph of Ford's Proposed Instruction B should have been included in the trial court's instructions. However, portions of the rest of the tendered instruction are far more questionable—the most egregious example being the third paragraph, which purported to instruct the jury that the maximum amount of punitive damages it could award was "the amount of money saved by Ford by not utilizing the alternative designs ... less the amount of compensatory damages."

■ It would have been improper for the trial court's instruction to include all of Ford's Proposed Instruction B, but we are inclined to hold that Ford's Proposed Instruction B properly preserved its allegation of error concerning the omission of the extraterritoriality admonition because the individual paragraphs in Ford's tendered instruction appear discrete and severable and the trial court could have avoided the error by "cutting and pasting" or "slicing and dicing" and incorporating the fourth paragraph of Ford's proposed instruction into its own instruction. Although the issue of preservation would be more clear cut if Ford's trial counsel had expressly argued for the introduction of the extraterritoriality admonition within the trial court's instruction—as it did with respect to the "purpose of punitive damages" language—the critical inquiry is whether the proposed instructions gave the trial court a fair opportunity to "get it right," and Ford's Proposed Instruction B did give the trial court that opportunity because it communicated Ford's position that the paragraph regarding extraterritoriality be included in the trial court's instruction on punitive damages.

## D. INSTRUCTIONS ON REMAND

At the time this case was tried, the standard for awarding punitive damages was set forth in KRS 411.184, but subsequently, in 1998, we held portions of the statute unconstitutional.[24] Those portions were contained in the instructions in this case; however, as neither party made any challenge to those portions of the statute, the jury's determination that Ford's conduct authorized an award of punitive damages stands; it is the law of the case.[25] In

---

**24.** *Williams v. Wilson*, Ky., 972 S.W.2d 260 (1998).

**25.** *Cf. Bowling Green Municipal Utilities v. Atmos Energy Corp.*, Ky., 989 S.W.2d 577, 580 (1999) (where failure to raise an objection, after *Williams v. Wilson*, to instructions given under KRS 411.184, resulted in the case being reviewed under the statute); *Goodloe v. City of Richmond*, Ky., 283 Ky. 633, 142 S.W.2d 155, 159 (1940) ("Applying the 'law of the case rule' to the questions here presented, it follows that the appellant, upon remand of his case, was entitled to a retrial upon the one and only issue declared upon the second appeal to present a recoverable loss and upon which he was entitled to go before the jury under proper instructions for an award of damages against the light and water company."); *Lexington & E. Ry. Co. v. Sexton*, Ky., 193 Ky. 201, 235 S.W. 773, 774 (1921) (This court gives a broader application to [the "law of the case"] rule than do courts of some other jurisdictions. We have uniformly extended it so as to bar on a second appeal, not only all questions that were actually determined on the first one, but likewise all questions which were involved in the first record or which could have been presented under the record therein, though unnoticed and though no reference was made thereto in the first opinion. If, however, the first opinion showed expressly on its face that the matters relied on subsequent thereto were not considered or determined, they will be left open and not affected by the rule.... Applying the rule to this appeal, the alleged errors in giving and refusing instructions cannot be considered by us, although we should conclude they possessed merit, for the same instructions were offered, given, and refused at the trial which was under review in the former opinion and the same errors were relied on then as now.);

light of *State Farm*, however, this case must be remanded for a new determination of the amount of any punitive damages awarded[26] using an instruction similar to the following instruction, which sets forth the purpose of punitive damages and provides a safeguard from extraterritorial punishment:

A jury previously found that Tommy Smith's injury and death were caused by the defective design of the transmission system installed by Ford Motor Company in the Ford F–250 pickup truck in 1977 and awarded Tommy Smith's Estate $3,000,000.00 as compensatory damages for his injury and death. The jury also determined that Ford Motor Company acted toward Tommy Smith with malice; therefore, you may now, in your discretion, award Tommy Smith's Estate punitive damages in addition to the compensatory damages previously awarded.

"Malice" means conduct that was carried out by the Ford Motor Company

---

*Louisville & N.R. Co. v. Payne*, Ky., 133 Ky. 539, 118 S.W. 352, 354–55 (1909)("It has frequently been held that, where certain instructions have been approved as the law of the case, upon a retrial only such should be given, and it is error for the trial court to fail or refuse to give those, or to give other or additional instructions. Of course, if the facts upon the retrial were different from those upon the former trial, the trial court would be justified in making the instructions conform to the facts."); *Sturm v. Meyer*, Ky., 12 Ky. L.Rptr. 350, 14 S.W. 359 (1890) (where instructions not excepted to will be regarded as the law of the case); *Ohio Valley R. Co. v. Alves*, Ky., 11 Ky. L. Rptr. 811 (1890) (instructions not excepted to are taken to be the law of the case); *H.R. ex rel. Taylor v. Revlett*, Ky.App., 998 S.W.2d 778, 780 (1999) (quoting *Siler v. Williford*, Ky., 375 S.W.2d 262, 263 (1964)) ("The 'law of the case' doctrine provides that: When an appellate court decides a question concerning evidence or instructions, the question of law settled by the opinion is final upon a retrial in which the evidence is substantially the same and precludes the reconsideration of the claimed error on a second appeal.").

26. *Smith v. McMillan*, Ky., 841 S.W.2d 172, 175 (1992) ("As we regard the issue of damages as 'distinct and severable' from the issue of liability in this case and discern no injustice which will result, retrial will be limited to damages."); *Turfway Park Racing Ass'n v. Griffin*, Ky., 834 S.W.2d 667, 672 (1992) ("This Court has long endorsed the view that damages may be separated from liability and that a case may be properly remanded for retrial of damages only. We have gone further and held in a personal injury case that an award of medical expenses without any award for pain and suffering was contrary to the law and remanded for a retrial of only the erroneous portion of the verdict.") (citations omitted); *Deutsch v. Shein*, Ky., 597 S.W.2d 141, 146 (1980) ("[W]here a distinct and severable issue is to be decided, a trial on that issue alone is appropriate unless such a retrial would result in injustice."); *Caton v. McGill*, Ky. 488 S.W.2d 345, 347 (1972) ("In view of the fact that the jury found against the appellees on the issue of liability, which finding is not challenged by cross-appeal in this court, and we are not cited to any manifest injustice which would result from a limited retrial, the retrial should be limited to the issue of damages."); *Louisville and Jefferson County Bd. of Health v. Mulkins*, Ky., 445 S.W.2d 849, 853 (1969) ("Since we find no error in regard to the determination of liability and since there are no indications of any prejudicial influences that might have affected that determination, we are remanding the case for a retrial only on the question of damages."); *City of Ashland v. Smith*, Ky., 340 S.W.2d 208, 209 (1960) (where liability was established and judgment reversed because of excessiveness of damages, retrial limited to damages only.); *Shortridge v. Rice*, Ky.App., 929 S.W.2d 194, 198 (1996) ("In light of our determination that Shortridge was wrongfully deprived of a jury instruction on punitive damages, we must consider the appropriateness of a retrial on the issue of punitive damages alone." [CR] 59.01 specifically authorizes a new trial for only "part of the issues" and "[t]he Kentucky Supreme Court has noted its strong preference for limited retrials on the issue of damages alone."); *see also* 7 KURT A. PHILIPPS, JR., KENTUCKY PRACTICE, CR 59.01, cmt. 4 (5th ed.1995).

both with a flagrant indifference to the rights of Tommy Smith and with a subjective awareness that such conduct would result in human death or bodily harm.

"Punitive damages" are damages awarded against Ford Motor Company for the purpose of punishing Ford Motor Company for its misconduct in this case and deterring it and others from engaging in similar conduct in the future.

Whether you make an award of punitive damages, in addition to the compensatory damages previously awarded, is a matter exclusively within your discretion. If, however, you award punitive damages, in determining the amount thereof, you should consider the following factors:

(a) The likelihood at the time of such misconduct by Ford Motor Company that serious harm would arise from it;

(b) The degree of Ford Motor Company's awareness of that likelihood;

(c) The profitability of the misconduct to Ford Motor Company;

(d) The duration of the misconduct and any concealment of it by Ford Motor Company; and

(e) Any actions by Ford Motor Company to remedy the misconduct once it became known to Ford Motor Company.

Evidence of Ford Motor Company's conduct occurring outside Kentucky may be considered only in determining whether Ford Motor Company's conduct occurring in Kentucky was reprehensible, and if so, the degree of reprehensibility. However, you must not use out-of-state evidence to award the Estate of Tommy Smith punitive damages against Ford Motor Company for conduct that occurred outside Kentucky.

If you award punitive damages, they must be fixed with calm discretion and sound reason, and must never be either awarded, or fixed in amount, because of any sympathy, or bias, or prejudice with respect to any party to the case.

### VERDICT FORM

(check one)

__ We, the jury, do not award punitive damages to Tommy Smith's Estate.

OR

__ We, the jury, award Tommy Smith's Estate punitive damages of

$_____.

[Number of jurors required for a verdict]

We would also note that should the question arise on remand of whether to admit evidence of Ford's financial condition, that in *State Farm*, the United States Supreme Court frowned upon " 'the presentation of evidence of a defendant's net worth[, because it] creates the potential that juries will use their verdicts to express biases against big businesses, particularly those without strong local presences." ' [27] Likewise, our predecessor court stated that "we are clearly of the opinion that no evidence as to the financial condition of either defendant or plaintiff should be admitted in any case in which punitive damages might be recovered" because "[t]he tendency of this class of testimony would be to lead the jury to consider chiefly the pecuniary condition of the defendant, rather than the enormity or wantonness of the act for which punitive damages might be allowed." [28]

**27.** *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417, 123 S.Ct. 1513, 1520, 155 L.Ed.2d 585, —— (2003) (quoting *Honda Motor Co. v. Oberg*, 512 U.S. 415, 432, 114 S.Ct. 2331, 2340–2341, 129 L.Ed.2d 336, 349 (1994)).

**28.** *Givens v. Berkley*, Ky., 108 Ky. 236, 56 S.W. 158, 159 (1900).

## III. CONCLUSION

For the above reasons, we vacate the judgment's award of punitive damages and remand for a new determination of the amount of punitive damages, if any, in accordance with this opinion.

LAMBERT, C.J.; COOPER, GRAVES and JOHNSTONE, JJ., concur.

WINTERSHEIMER, J., dissents by separate opinion in which STUMBO, J., joins.

Dissenting opinion by Justice WINTERSHEIMER.

I must respectfully dissent from the majority opinion because the failure to include additional limiting instructions concerning extraterritorial punishment was not a sufficient reason to vacate the punitive damages award and remand the case for a new trial on that issue.

In my review, it would appear that the question of whether this objection was properly preserved is highly debatable. Ford did not present objections to specific omissions by the trial judge in declining to apply a 17–page suggested instruction. Ford's counsel stated "I object to the entire set to be given by the court insofar as they fail to incorporate the various components of the instructions tendered by Ford Motor Company and I will not take the court's time to itemize all those." Although counsel for Ford pointed to other specific items that it considered important, the component of extraterritorial punishment was not made specifically.

This blanket objection to the failure to incorporate poorly worded and egregiously self-serving instructions serves in at least some fashion, as a subversive tactic by Ford to stall the plaintiffs and potentially drive the cost of litigation so high that Ford could achieve a reduced settlement or avoid the payment altogether. It also pushes the perceived cost of litigating against Ford so high that diminishing the punitive damage awards or creating the perception that punitive damages will be small may serve as a significant deterrent to future plaintiffs who seek redress from Ford.

*Sand Hill* is an action for wrongful death. It is clearly in the interest of the Commonwealth to protect its citizens from such harm and could be considered as distinct from the interest of protecting citizens from mere economic damages. The right to recover in wrongful death claims is specifically protected by constitutional sections 14, 15 and 241. Reliance on *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003), is misplaced because that case involves an action for bad faith with economic loss rather than personal injury or wrongful death.

It is curious to note that the argument presented by Ford is exactly the same argument it advanced in its earlier brief in the case of *Sand Hill Energy, Inc. v. Ford Motor Co.*, Ky., 83 S.W.3d 483 (2002), in which a majority of this Court reversed a decision of the Court of Appeals and reinstated a $3 million compensatory award and $15 million of the original $20 million for punitive damages. The Supreme Court of the United States granted the petition of Ford to vacate *Sand Hill I* and remanded it to this Court for further consideration in the light of *State Farm, supra*. As noted in the majority opinion, Ford has paid the compensatory damage award of $5,596,425, and the parties agree that the only issue remaining is the viability of the $20 million punitive award. If we are to consider this case only on the basis of suggested ratios in *State Farm*, the multiplier of 6 + times the $3 million would give us a $20 million punitive award which

is well within the range suggested by the United States Supreme Court.

However, in the majority decision in this case, we have departed from what appears to be the mandate of the United States Supreme Court and embarked upon a reconsideration of our original decision in *Sand Hill* in 2002. The instructional issue was raised in that case and in particular, discussed at length in a dissenting opinion. It could now be said that we are in a kind of rehearing mode rather than accepting the direction of the remand order. The parties are not served by this de facto rehearing or reconsideration.

Even if we consider this case as distinct from the economic damage theory advanced in *State Farm*, we should consider the analysis provided by Judge Richard Posner of the Seventh Circuit Court of Appeals in *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir.Ill. 2003). The Federal Court of Appeals in that case gave an example of the recovery allowed for a battery committed by spitting in another's face. In such cases, the compensatory damages must be nominal because there is no way to represent the actual damages adequately. Therefore, and among other reasons, the U.S. Court of Appeals concluded that applying a ratio to such a case is meaningless. The Court stated "the judicial function is to police a range, not a point." In the *Mathias* case, the plaintiff had suffered personal injuries because of being bitten by bed bugs in a motel. Judge Posner likened their damage more to having been spit in the face, than to damages caused by breach of contract. Even though the plaintiffs had actual damages represented by medical bills, the federal court determined that there is more purpose behind the punitive damage concept than merely magnifying actual costs. Adequate deterrence of the tortious activity and of vigorous litigation, as well as making it economically feasible to litigate such cases, were among the reasons stated for upholding the entire punitive damage award. Therefore, the court upheld the punitive damages without regard to the ratio between compensatory and punitive.

Under all the circumstances, we should do the same. Further elongation of the litigation here does no service to anyone and merely blurs the line between compensatory and punitive damages.

Nationally, there is no question that some jury verdicts awarding punitive damages have been excessive. The United States Supreme Court has wisely chosen to address such a situation by requiring a de novo review of such awards by state appellate courts and has suggested some numerical guidelines for such review. It is very unfortunate that there are a few runaway juries that award outrageously large punitive verdicts. On the other side of the coin is the fact that individual and corporate entities must be held accountable for flagrant misbehavior that results in both physical and economic injury and damage. There is no doubt that the many advances in consumer safety and health have resulted from diligent pursuit of civil wrongdoers. The key to a just solution is balance and reasonableness. It is only the venal and greedy who have anything to fear. A simple mistake that does not result from negligence, malice, carelessness or indifference is rarely the subject of a significant punitive award.

In *Campbell*, the United States Supreme Court properly promulgated a general standard to be applied as each particular case required. Under any analysis, the ratio formula suggested by *Campbell* is not exceeded here. Thus, it can be considered that the punitive damage award is well within any acceptable guideline.

Fear of unreasonable litigation has impaired, to some degree, our basic ability to make sensible decisions. Doctors, clergy, teachers and even lawyers, as well as the general public and business, find every day decisions conditioned by a concern about frivolous litigation. Many people are nervous about doing almost anything. Such an atmosphere is not consistent with true liberty and freedom of activity. Lawsuits have a place in our culture, but not the only place. They should be undertaken carefully for valid causes. Threats have no place.

Certainly, excessive punitive verdicts are a serious problem, but equally serious is the unreasoned fear of the application of such verdicts to well-meaning professionals and organizations. Both conditions contribute significantly to excessive insurance rates for many businesses and professionals. The answer is not to unduly or unconstitutionally limit the right of recovery, but rather for an improvement of the regulation of the insurance industry such as has been accomplished in California.

There is no easy solution. Perhaps part of the resolution could be an intense comprehensive study by the appropriate governmental agency as to a proper review of the regulation of the insurance industry. Certainly, our society is flexible enough to accommodate many competing concerns without diluting our fidelity to Sections 14, 54 and 241 of the Kentucky Constitution which protect the rights of the citizens to recover damages.

True reconsideration, by definition, does not necessarily mean automatic change. The remand authorized by the majority is unwarranted and does not satisfy the mandate of the United States Supreme Court.

However, considering the approach taken by the majority, it is my opinion that the original decision of this Court should be vacated and the punitive damage award given by the jury should be reinstated.

STUMBO, J., joins this dissenting opinion.